# ISAAC H. BURCH

*v.*

# GURDON S. HUBBARD.

1. CONSIDERATION — *release of an acceptor.* Where an acceptor of a bill of exchange, before its maturity, delivers to the holder a warehouse receipt for produce, with the express agreement, that by doing so the acceptor is to be released and discharged from liability: *Held*, That the delivery of the receipt is a sufficient consideration to support the agreement for the discharge and release.

2. PLEADING AND EVIDENCE. Under a plea that such warehouse receipt was delivered to the holder of a draft, upon the agreement to fully discharge and release the acceptor, evidence showing that the contract was made, and the produce receipt delivered, is admissible in support of the plea, inasmuch as it presents a legal defense.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Chief Justice, presiding.

The facts are stated in the opinion.

Brief for the appellant.

Messrs. ISHAM & WASHBURN, for the appellant.

1st. Where one has accepted a bill of exchange merely as a surety, in the understanding of all the parties, and for his indemnity holds securities of the drawer, is the mere transfer of such securities to the creditor, to be by him, in turn, held as collateral to the bill, a consideration that will sustain an engagement by the creditor to exonerate the acceptor from his liability on the acceptance? Such a contract requires a consideration. 2 Am. Lead. Cas. 423; 2 Lead. Cas. in Eq., pt. 2, 386; Edwards on Bills and Notes 435; Story on Bills, sec. 266; *The Bank* v. *Klingensmith*, 7 Watts 523; *Parker* v. *Leigh*, 2 Starkie 228; 1 Parsons on Notes and Bills 326.

2d. In the case in question, no consideration moves from the acceptor to the creditor. The creditor *acquires nothing that he had not already*. The creditor is entitled to the full benefit of securities given by the debtor to a surety for his indemnity. 1 Lead. Cas. in Eq. 120; *Moses* v. *Murgatroyd*, 1 Johns. Ch. R. 119. These collateral securities are *trusts* created for the better protection of the debt. *Moses* v. *Murgatroyd*, 1 Johns. Ch. R. 119; 2 Am. Lead. Cas. 429; 4 Kent's Com. 307; *Maure* v. *Harrison*, 1 Eq. Cas. Abr. 93, pl. 5; *McCullum* v. *Hinckley*, 9 Vt. 143; *Bank of Auburn* v. *Throop*, 18 Johns. 505; *Curtis* v. *Tyler*, 9 Paige 432; *Vail* v. *Foster*, 4 Comstock 312; *Smith* v. *Steele*, 25 Vt. 427; *Eastman* v. *Foster*, 8 Metc. 19, and cases cited.

3d. Nor must the creditor first resort to the personal liability of the surety, but may have the securities applied directly in discharge of the debt. His right to the benefit of such securities is equal to that of the surety, and fully as direct. *Hopewell et al.* v. *Bank of Cumberland*, 10 Leigh 221; *Constant* v. *Matteson*, 22 Ill. 556.

4th. Where one acquires no greater or different interest than he has already, and no other benefit than such as a court

would enforce for him, there is no element of a consideration for a new contract. *Crosby* v. *Wood*, 2 Seld. 369; *Goodwin* v. *Follett*, 25 Vt. 386.

5th. This right of the creditor is an equitable right, but it is taken notice of in courts of law, and the rule is the same at law and in equity. It is now held as a general rule, that the liability of sureties is governed by the same principles at law as in equity. *Viele* v. *Hoag*, 24 Vt. 51; *Rees* v. *Berrington*, 2 Vesey 541; *Leverenz* v. *Haines*, 32 Ill. 357; *People* v. *Jansen*, 7 Johns. Rep. 332; *King* v. *Baldwin*, 2 Johns. Ch. R. 557; 2 Am. Lead. Cases 399, 406, 407; 2 *Ibid* in Eq. Practice 390.

6th. The acceptor can give the creditor no other rights to this security than such as he has himself; and all that he has himself, the creditor has already, and a court of chancery, and sometimes a court of law, will enforce them for his benefit, and that, too, *directly upon the securities.* What a court will compel, can be no consideration for a contract. *Crosby* v. *Wood*, 2 Selden 369; *Goodwin* v. *Follet*, 25 Vt. 386; *Onely* v. *Earl of Kent*, 3 Dyer 356.

7th. But even if the creditor could thus acquire any interest in these securities, which he had not before, still, such consideration the acceptor would have no right to give, and, therefore, it would be insufficient to support the contract. The acceptor holds the securities in trust, with no power to delegate the possession and disposition of the property; such conduct is a breach of trust, and chancery, upon application, will retake the property. The acceptor can not make his breach of trust the consideration of a contract. Hill on Trustees 173; do. 175 and note 1; *Haslan* v. *Sherwood*, 10 Bing. 540. For the same reason the trustee can not make the trust property the consideration of a contract for his private benefit.

Messrs. Rae & Mitchell, for the appellee.

In this case the issue was, that the appellee had, before the commencement of the suit, and before the maturity of the indebtedness, delivered to appellant, which was accepted by him, " pork shoulders, and sides of pork," in full satisfaction and discharge of the undertaking on the part of appellee, as an acceptor of the draft sued on. The plea is equivalent to that of payment, and, therefore, an affirmative plea.

1st. The appellant now claims that a creditor has an absolute right to all the collaterals placed, by the debtor, in the hands of the surety, either before or after the indebtedness accrues; and that, too, without releasing the surety, and, as a consequence, that a transfer of such securities, by the surety, furnishes no legal consideration for an agreement with a creditor to release the surety. The appellee claims that no such right exists, *before* maturity of the undertaking, and that *after* only at the price of releasing the surety. 2 Am. Leading Cases 429.

2d. The appellant claims that the drawer of the bill is entitled to have the property *remain* in the custody and control to which it was specifically intrusted, and that the appellee would be guilty of a breach of trust to transfer it to the appellant, and, therefore, the consideration for such transfer would be illegal. The appellee answers that appellant's first position is in singular contrast with the last. If the appellant's creditor is entitled to the security, so as to take it away from the custody and control to which it was specially intrusted, what becomes of the drawer's right to have it remain where he put it?

3d. As to the question of variance, the plea simply alleges that appellant delivered the property in full satisfaction and discharge of the promises and undertakings, &c., and does not allege that it was delivered by way of sale, pledge, loan or otherwise. The delivery of property into the possession of another may, under certain circumstances, be a good consideration to sustain an agreement. The delivery of property in pledge, by the acceptor, to secure the payment of a draft by

the drawer thereof, in consideration that the acceptor should be discharged, might work a great advantage to the creditor, and he might deem it much more desirable to have collateral security of personal property than mere mercantile credit or ability of any acceptor. Any proof, therefore, which shows the property was delivered to the appellant by the appellee, and accepted by the former, in satisfaction of his undertaking, upon a legal consideration, would tend to prove the issue, and would not be a variance.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, by appellant, in the Superior Court of Chicago, against appellee, upon his acceptance of this bill of exchange:

"($13,000.)                    CHICAGO, 16th April, 1861.
"Thirty days after date, please pay to ourselves, or order, thirteen thousand dollars, at I. H. Burch & Co.'s Banking Office here, value received, and charge the same to account of
                                        S. HOLMES & SON.
"To Messrs. G. S. HUBBARD & Co., }
            Chicago, Ill."              }

There were various payments indorsed on this bill, amounting, in the aggregate, to $6,500, made at different times. The declaration contained a special count on the acceptance, and the common counts. Appellee filed a plea of the general issue, and two special pleas. The first special plea was, that appellee had, after the making of the bill, delivered to appellant a quantity of pork, of the value of $16,000, in full satisfaction and discharge of the several sums of money mentioned in the declaration, and that appellant accepted it in full discharge and satisfaction of the same. The second special plea was a set off. At the trial, appellant withdrew

the plea of the general issue, and the cause was tried upon the special pleas.

For the purpose of enabling Holmes & Son to purchase a lot of pork in Milwaukee, appellee accepted the draft, and it was discounted by appellant; some time about the last of April, or the fore part of May, appellee, learning of the failure of a house in New York, to whom he had shipped a large amount of provisions, and upon whom he had drawn largely, and fearing the failure might involve his firm in financial ruin, left Chicago for New York, but, on leaving, requested Charles P. Hunt to call, the next morning, upon appellant, and ascertain whether he would receive a warehouse receipt of Holmes & Son, and release him, and, if he should consent to do so, then to procure the warehouse receipt, deliver it to appellant, and procure his release.

Hunt testifies that he called upon appellant the next morning, at his bank, stated to him the facts, and communicated the request of appellee, and after making a statement of the amount and character of the pork proposed to be pledged as collateral security, and to obtain the release of appellee, after making a calculation of its value, appellant agreed to receive the receipt and release appellee. Hunt thereupon procured the receipt, and delivered it to appellant, and proposed that he should erase appellee's name from the acceptance; but he says it was understood, if the receipt was obtained and delivered to appellant, he would release appellee; that nothing was said about any further communication with him in relation to the matter; that the property was not sold to appellant, but the receipt was delivered to appellant as security for the draft; that the receipt was indorsed in blank, and not filled up at the time.

Appellee introduced evidence tending to show that the meats were worth more than enough to have paid the draft, when it matured, but they were not sold at that time, and meats continued to decline for some time afterwards. Appellant

22—48TH ILL.

subsequently failed, and made an assignment for the bene-
fit of creditors, and this draft was passed to his assignees
as a part of his assets.   Dexter, who was the assignee to whom
the draft was delivered, stated that the meats were smoked,
shipped east, and sold for the sums endorsed on the draft;
that appellee set up no claim that he was discharged from its
payment, until a short time previous to the commencement of
the suit.   Appellant denied that the receipt was taken in dis-
charge of appellee's liability, but testifies that it was in
pursuance of an agreement entered into when the draft was
discounted; and appellee, in his testimony, denies that any
such agreement was made, or that he had any thing to do in
negotiating the loan, beyond the acceptance of the bill.

The jury found a verdict for appellee, thereby giving
credit to the testimony of Hunt and appellee, rather than to
appellant.   The evidence being conflicting, it was for them to
consider it, and from it to find the facts; and having so found,
we shall consider the defense as established by the evidence.

It is, however, urged, that, although the first special plea
was proved, it nevertheless does not constitute a legal defense.
Was, then, the receipt, when received by appellant in dis-
charge of appellee's liability as an acceptor, in law a discharge
of that obligation?   It is urged that there was no considera-
tion to bind appellant on his agreement to release appellee.
It will be observed that the bill was not due at the time this
arrangement was entered into by the parties.   Appellee was
then under no obligation to place this pork in the hands, and
under the control, of appellant, whatever he might have felt
to be his moral duty, at a time when he supposed he was
financially ruined, and that he would be compelled to make
an assignment for the benefit of his creditors.   When the
receipt was given, he could have sold the property, we pre-
sume, for more than enough to pay the bill, as it appears to
have been originally purchased for sixteen thousand dollars,
and the evidence seems to prove that it was, at the maturity

of the draft, worth more than enough to have paid the amount. By giving this receipt, the control of the pork was taken out of the hands of appellee, and he was prevented from disposing of it to meet the draft, as he then held it as an indemnity against loss by this acceptance. This would seem to be a sufficient consideration to support a release of this character, and it does not matter whether appellee was a principal or a surety, so far as the discharge may be involved. Had the pork, on the maturity of the bill, been sold, and failed to produce the requisite sum, it would, nevertheless, have operated as a release of appellee. Had it been a promissory note, and property had been delivered as this was, with an agreement that the maker should be released, no reason is perceived why it would not have satisfied the note and discharged the maker.

It is held that an act which is a benefit to one party, or a disadvantage to the other, constitutes a sufficient consideration to support a contract. In this case, the fact that appellee lost the power to sell and convert the property, if it had been but for the nineteen days which the bill had to run, was an inconvenience, and a loss of the use of the proceeds of such a sale, for that period, to say nothing of the ultimate loss, by depreciation, which ensued after the bill matured.

It is also urged, that the evidence was not admissible under the pleadings. From what has been said it follows that it was. The plea was, that the delivery of the receipt, which placed appellant in the control of the property, was upon the condition that appellee should be released. We have seen that such a transaction would operate to release appellee, whether principal or surety, and, if so, the plea presented the defense, and, consequently it could be proved. We see no substantial difference between a principal and a surety, when such a release is made by the holder. He receives the property, agrees to look to it for payment, and to release the acceptor, and no reason is perceived, in justice or fair dealing, why the holder

should not be required to perform his agreement. If loss has ensued, it was the fault of appellant, as, being the holder of the receipt at the maturity of the bill, he could have sold the property, and, from the proceeds, paid the bill. Having failed to do so, upon what principle can it be held that he may ignore the release and collect the money from appellee, and impose upon him the loss?

The judgment of the court below must be affirmed.

*Judgment affirmed.*