## MILFORD D. BUCHANAN

### *v.*

## THE INTERNATIONAL BANK.

1. RECORDING LAWS—*as notice of incumbrance.* Although a party purchasing notes secured by deed of trust upon real estate has no actual notice of a prior incumbrance, yet if it is upon the record at that time, and at the time the deed of trust was executed, he will be bound to take notice of such prior incumbrance, and its legal effect, and whatever rights he acquires by sale under his deed of trust, will be subject thereto.

2. DEED OF TRUST—*effect of a conveyance of the equity of redemption to party secured, after he parts with the notes.* If a party, giving a deed of trust to secure the payment of notes to another, after the latter has parted with the notes for a valuable consideration, conveys the premises to the original holder of the notes, it will be subject to the trust deed, and all persons claiming under the latter will occupy no better position.

3. COLLATERAL SECURITY—*when held for other indebtedness than that for which it is specially pledged.* If a party executes an agreement to secure past and future loans, by which all collaterals given and thereafter to be given to secure the payment of specific notes for money loaned to him, are to apply generally to all notes held at any time by the party loaning, notes afterwards pledged for a special loan will not only be a security for the particular loan then made, but for the payment of all notes held by the lender, regardless of the manner in which they are secured, or their date.

4. In such a case, so far as future advances are made, the contract is in the nature of a mortgage, and will be binding between the parties for any and all advances made prior to the time of third parties acquiring an interest in the collaterals pledged.

5. CONSIDERATION—*generally.* Any act which is beneficial to one party, or a disadvantage to the other, is a sufficient consideration to support a contract.

6. SECURITY—*party may rely upon several, and enforce either.* A party loaning money under a general security, may also take special security, and rely upon either or both, and the right to determine which he will enforce, is with him, and not with the borrower, or those claiming under him.

7. ACCOMMODATION PAPER—*may be taken as a security.* If a party, taking notes as collateral security for money loaned, and for past and future advances, has knowledge that they were accommodation notes, this will be no reason why he may not enforce their payment for future advances, as against one acquiring rights after such advances are made.

APPEAL from the Circuit Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. GEORGE W. SMITH, for the appellant.

Messrs. ROSENTHAL & PENCE, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by appellant, to remove from the record and cancel two certain trust deeds, which were executed on the 19th day of January, 1871, by Alpheus C. Badger to one Rogers, as trustee, to secure the payment of two promissory notes of $6666.66 each, given by Badger, payable to the order of Samuel J. Walker, one in one year and the other in two years from the date thereof, with interest at eight per cent per annum.

To the bill, the appellee, the International Bank, filed its answer and cross-bill, in which it prayed that a decree might be rendered ordering the premises described in the trust deeds, which were given to secure the two notes from Badger to Walker, be sold, and the proceeds of the sale paid to the bank to the full amount of the two notes and interest, or so much thereof as should be realized upon a sale of the premises.

Upon the hearing, the court entered a decree dismissing appellant's bill, and ordered the premises sold as prayed for in the cross-bill, and that the proceeds of the sale, to the

amount of the two notes and interest, should be paid to appellee, and the balance to appellant.

To reverse the decree, appellant has brought this appeal.

The two trust deeds given by Badger were at once placed upon record, and, on the 21st of January, 1871, Walker borrowed of appellee $9500, and to secure the payment of the money, he transferred to appellee, as collateral security, the two notes executed by Badger, which were secured by the two deeds of trust.

The $9500 debt was subsequently reduced to $8000. This amount, together with the interest upon it, appellant concedes appellee is entitled to have paid by a foreclosure of the two deeds of trust, while appellee claims the right to have the balance of the two notes secured by the trust deeds applied on other indebtedness due from Walker to it, under an agreement executed by Walker, as follows:

"CHICAGO, *July* 7, 1869.

Whereas, the undersigned has heretofore, and intends hereafter, to borrow money from the International Mutual Trust Company, on his own note or notes, or the note or notes of H. H. Walker; and whereas, to secure the payment of such note or notes he has heretofore, and intends hereafter, to deposit collateral securities; and whereas, such collaterals were given and are hereafter to be given to secure the payment of specific notes; now, therefore, for the purpose of more fully securing the said International Mutual Trust Company, I do hereby agree that all and singular the collaterals by me given, or to be given as aforesaid, shall, of the option of said International Mutual Trust Company, apply generally to all notes held at any time by said trust company, executed by me or said H. H. Walker, and shall also apply and be considered collaterals to secure the payment of any and all notes negotiated for my account, by said trust company.

SAMUEL J. WALKER."

There had been a large amount of dealing between Walker and appellee, and at the time of the trial, appellee showed an

indebtedness against Walker of over $2,000,000, which appeared from various promissory notes. Among others were two dated December 30th, 1871, one for $10,000 and the other for $16,740.

It also appears that, on the 27th day of March, 1872, Badger, by quit-claim deed, conveyed the premises in controversy to Walker, which was recorded on the 16th day of May, following. Prior to this, however, Walker, on the 23d day of February, 1872, conveyed the premises by general warranty deed to one Kinney, which deed was recorded Aug. 13, 1872.

On the 23d day of March, 1872, Kinney conveyed by trust deed to Rogers, to secure three notes of $6666.66 each, given to Walker. This deed was recorded on the 26th of March, 1872.

On the 7th day of May, 1872, the Commercial Loan Co., through appellant, its cashier, purchased the notes given by Kinney to Walker. On the 25th day of April, 1874, after the note given by Kinney to Walker was due, on default of payment, the trustee, Rogers, sold the premises on the trust deed, and appellant purchased the same for the sum of $5000.

While it is true, at the time appellant purchased the Kinney notes from Walker, he was informed by the latter that the premises were free from prior liens, and although he had no actual notice of the trust deeds which secured the notes held by appellee, yet these trust deeds being upon the record at the time Kinney derived title, and at the time he executed the notes and deed of trust under which appellant claims, he was bound to take notice of the existence and legal effect of the prior deeds of trust upon the premises, and whatever rights he acquired under the Kinney deed of trust, were subject to those first given and placed upon record.

The registry laws would be useless, unless subsequent purchasers were bound to take notice of the existence of a deed previously recorded, and although appellant may have been an innocent purchaser in fact, he can not be so regarded in

law. He had no right to rely upon the representations of Walker in regard to the title to the premises, and if he saw proper to do so without consulting the record, which was open to his inspection, it was at his own peril.

At the time Walker obtained a deed of Badger, he had parted with the title to the notes and trust deeds Badger had previously given. They were held by appellee, and hence Walker occupied no better position than an entire stranger to the transaction would, had he purchased of Badger. The conveyance could not have been made otherwise than subject to the trust deeds held by appellee. Kinney, being a grantee of Walker, and appellant claiming under Kinney, could occupy no better position.

Then the only real question involved in the case is, whether, under the contract executed by Walker on the 7th day of July, 1869, appellee is entitled to hold the Badger notes as security for any indebtedness of Walker other than the $9500 debt, for the payment of which these notes were specially pledged on the 21st day of January, 1871.

By the terms of the contract executed by Walker, he expressly agreed that any and all collaterals which he had or should pledge to appellee to secure the payment of specific indebtedness, should be held and applied by appellee generally, to the payment of any and all such notes as appellee might hold against Walker at any time.

The contract was one for the security of prior and future advances by the pledge of collateral security. A collateral then or thereafter pledged for the payment of one note, under the terms of the agreement, could be held not only as security for the payment of that particular note, but for the payment of all notes held by appellee against Walker, regardless of the manner in which such other notes might be secured, or the date they might be given.

In so far as the security of future advances was concerned, the contract was in the nature of a mortgage, and we perceive no reason why, as such, it would not be binding between

Walker and appellee for any and all advances made prior to the time, at any rate, that third parties should acquire an interest in the collaterals which would be pledged, unless the contract is liable to be defeated and rendered nugatory in the manner insisted upon by appellant, which we will now consider.

It is urged by appellant, first, that there was no consideration for the agreement. It is true, a contract, to be binding, must be based upon a consideration, but we understand that any act which is a benefit to one party, or a disadvantage to the other, constitutes a sufficient consideration to support a contract. *Burch* v. *Hubbard*, 48 Ill. 164.

The money advanced to Walker as a loan could not be regarded otherwise than beneficial to him, and it is unreasonable to presume the money would have been loaned, had it not been for the agreement. The fact that appellee may have taken security for each loan made, in addition to this agreement, does not in the least tend to establish the fact that the loan was not also made on the faith of the contract; in fact, no other object can be imagined for accepting the contract.

The law does not require a party to rely alone on one kind of security. A claim may be secured in as many different modes as the parties may agree. It is not unusual to see a claim secured at the same time by personal security and real estate, and the holder of the indebtedness may resort to the land, the personal security, or both, to compel payment or satisfaction of the debt.

We are, therefore, of opinion that the loans made by appellee to Walker answer fully the objection that there was no consideration for the contract.

The testimony introduced shows that appellee, in its transactions with Walker, was acting under and in pursuance of the contract. Mr. Loewenthal, in his evidence, says: "They (the Badger notes) were deposited as special, to secure those notes, as heretofore stated, and they were also, under an agreement existing between the bank and Mr. Walker, to be held

as general collateral for any and all indebtedness from Mr. Walker to the bank."

It is, however, claimed that the contract of July 7th, 1869, is a mere option, and that the evidence fails to show that appellee elected to hold the collaterals for Walker's general indebtedness prior to the filing of the cross-bill.

We do not regard the contract as optional, in the sense that term is ordinarily used.

Under the contract, appellee had the choice to rely upon the collaterals to secure the general indebtedness of Walker, if it saw proper. That choice it has elected to exercise, and neither Walker, nor those claiming under him, had the power to annul or abrogate it.

The option that was vested in appellee under the contract was similar to that of a mortgagee, who may rely upon the mortgage if he desires, or proceed directly against the maker of the note, and enforce payment in that manner, without regard to the mortgage security.

It is also urged by appellant that the Badger notes transferred to appellee were accommodation paper, and hence nothing more can be collected upon them than the amount for which they were negotiated by Walker.

It does not appear that appellee, when it purchased the notes, had any knowledge that they were accommodation paper; but even if it did, such fact could not change the result. If appellee had the right to hold the notes as security for future advances, as well as for the debt for which they were specifically pledged, as they undoubtedly had, under the contract of July 7th, 1869, then the proof shows that the amount for which the notes were held by appellee exceeded the amount of the Badger notes.

In any view we have been able to take of the facts presented by the record, and the law arising upon these facts, the decree rendered by the court below was correct, and it will be affirmed.

*Decree affirmed.*