GEORGE BARTELOTT

*v.*

THE INTERNATIONAL BANK.

*Filed at Ottawa January 25, 1887.*

1.  PRACTICE—*motion to exclude all the evidence, or to instruct the jury to find for the defendant—as likened to and distinguished from a demurrer to evidence.*  Motions to exclude the entire evidence from the jury, and motions to instruct the jury to find for the defendant, are in the nature of demurrers to evidence, in this, that they admit not only all that the testimony of the plaintiff proves, but also all that it tends to prove.  But they are not subject to any of the technical particularity required in demurrers to evidence, and no judgment is rendered against the defendant on disallowing them.

2.  SAME—*directing what the verdict shall be—upon what condition of the evidence— and of the modes of withdrawing a case from the jury.*  The evidence tending to prove a cause of action which will entitle the plaintiff to have it passed upon by a jury, and which will render it error to instruct the jury to find for the defendant, must be more than a mere scintilla of evidence. It must be evidence upon which the jury can, without acting unreasonably in the eye of the law, decide in favor of the plaintiff or the party producing it.

3.  Where the plaintiff fails to give any evidence of a fact essential to his right of action, the defendant may take advantage of the omission by simply presenting to the court an instruction excluding the entire evidence, or directing the jury to find for him, or it may be done by both these ways.

Syllabus.

4. SAME—*at what stage of the trial such motions may be made.* Where such motion may be rightfully made, it is proper and most convenient to make it at the close of the plaintiff's evidence; but there is no reason or authority why it may not be made after evidence has been heard in behalf of the defendant. At most, the latter course can only affect the question of costs incident to the examination of the defendant's witnesses on a motion to re-tax the costs.

5. PLEADING—*amending declaration—effect upon prior plea.* Where two are sued in assumpsit, and one of the defendants pleads that he, together with the other defendant, did not undertake and promise, etc., which is a plea not sworn to, and a *nolle prosequi* is entered as to such other defendant, and the declaration is amended so as to show only an individual liability, the plea will amount to but the general issue, and the clause relating to such other defendant may be treated as surplusage.

6. SAME—*practice where plea is inapplicable to declaration as amended.* Where the plaintiff dismisses his suit against one of two defendants, and amends his declaration so as to show an individual instead of a joint liability, and no new pleas are filed, and the parties go to trial upon the issues formed under them, it will be too late to raise any question as to defects in the pleas, or their applicability to the amended declaration. If such pleas are not good, they should be demurred to, and if deemed inapplicable, the defendant should move to strike them from the files.

7. EVIDENCE—*hearsay—deposition of a witness in a different suit.* An action was brought against a bank and its cashier, but was dismissed as to the latter before the trial, at which the plaintiff offered in evidence a deposition of the cashier, taken in another suit between the bank and a third party: *Held,* that such deposition could not be admitted as original evidence in the last action, as the cashier was not a party thereto. His statements in the deposition would be admissible in the later suit only for the purpose of contradicting him, a proper foundation being first laid for that purpose.

8. BURDEN OF PROOF—*on replication to plea of the Statute of Limitations.* Where the plea of the Statute of Limitations is interposed to a declaration containing only the common counts, and the plaintiff replies, setting out the specific facts constituting the cause of action, and that knowledge of such facts was concealed from him by the defendant, and this is traversed, it will be incumbent on the plaintiff to prove, first, the existence, and then the concealment, of the alleged facts.

9. SAME—*purchaser of land—burden of showing the land discharged as a collateral for various debts.* Where a party deposits notes secured by deed of trust, with his banker, as collateral security for a loan, under a written agreement authorizing the bank to hold all collaterals pledged for particular loans, for the payment of all notes held by the bank on the pledgor, the burden of proof will lie upon a purchaser of the land described in the trust deed to show, not only that the particular loan was paid, but also that the collaterals were released from the general pledge for other debts of the pledgor.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. R. S. WILLIAMSON, Judge, presiding.

On October 17, A. D. 1881, George Bartelott brought an action of assumpsit, in the Superior Court of Cook county, against the International Bank and Berthold Lowenthal. The declaration contained the common counts, only. The bank filed the following plea: "And the International Bank, one of the above named defendants, by Bisbee & Ahrens, its attorneys, comes and defends the wrong and injury, when, etc., and says that it, together with said Berthold Lowenthal, did not undertake and promise in manner and form as the plaintiff has above thereof complained against it; and of this it puts itself upon the country," etc. This plea was not sworn to. And the bank also pleaded specially, first, that it was not jointly liable with Berthold Lowenthal, which was sworn to; second, the five years' Statute of Limitations; fourth, former settlement with plaintiff. There were issues formed upon these pleas, but they need not be specially noticed.

During the progress of the trial a *nolle prosequi* was entered as to Berthold Lowenthal. The cause then proceeded, resulting in a judgment for the plaintiff. This judgment, on appeal, was reversed in the Appellate Court, and the cause remanded for a new trial. (*International Bank* v. *Bartelott*, 11 Bradw. 620.) No amendment was made of the declaration, after the *nolle prosequi* as to Lowenthal, before the trial, and no rule was taken against the bank to plead further to the declaration. The plea above recited is called and treated as the general issue, in the opinion of the Appellate Court, *supra*.

After the cause was remanded and re-docketed in the Superior Court, on the 16th of January, 1883, the plaintiff asked leave to amend his declaration, and also to amend his replication to the plea of the Statute of Limitations, which replication the opinion of the Appellate Court had held to be

insufficient.   The leave asked was granted, and thereupon appellant filed a new declaration, containing the common counts only, omitting entirely the name of Berthold Lowenthal; and he, also, then filed an amended replication to the defendant's plea of the Statute of Limitations.   No rule was taken against the defendant to plead to the amended declaration, but the pleas filed to the original declaration remained on file.   Thereafter, the Superior Court rendered judgment in favor of the defendant, on demurrer to the plaintiff's replication to the plea of the Statute of Limitations.   The plaintiff appealed from this judgment to the Appellate Court, and that court reversed the judgment of the Superior Court, and again remanded the cause for a new trial.   (*Bartelott* v. *International Bank*, 14 Bradw. 158.)   In the opinion then filed, the Appellate Court again treated the record as containing the plea of non-assumpsit.

No subsequent changes were made in the pleadings, and the cause, upon being remanded and re-docketed in the Superior Court, again came on to be tried, and was tried in that court at its March term, A. D. 1883.   On that trial the plaintiff contended, that about October 12, A. D. 1870, he purchased of Samuel J. Walker, block 12 and the west half of block 11, in assessor's division of section 18, town 39, range 14 east, in Cook county, for the sum of $48,500; that said Samuel J. Walker procured Henry H. Walker to make a deed to plaintiff for the property; that said Samuel J. Walker assured plaintiff that the property was free of all liens or incumbrances, and promised plaintiff, from time to time, before and after the making of the deed, to furnish plaintiff with an abstract of title to the property, but he did not furnish it; that about January 1, 1874, plaintiff had an abstract of title of the property made, and, upon examination of that, it showed that a trust deed had been given on the property on the 22d day of July, A. D. 1869, by said Henry H. Walker, to one Francis A. Hoffman, as trustee, to secure two promissory

notes of said Henry H. Walker, for the sum of $15,000 each, payable to the order of Samuel J. Walker; that at the time he purchased from Samuel J. Walker, plaintiff did not know of said trust deed being upon the property, and that he did not purchase subject to it, and assume its payment; that the notes secured by the trust deed had been deposited with the defendant, by said Samuel J. Walker, as collateral security for certain other notes, amounting to $20,000; that on the 11th of September, A. D. 1873, said Samuel J. Walker paid said defendant said $20,000, and cancelled the principal notes, and thereby also cancelled the said two $15,000 notes secured by the trust deed aforesaid, and left all of said notes in defendant's keeping; that in the month of January, A. D. 1874, when plaintiff discovered that the property was incumbered by said trust deed, he made diligent inquiry to learn whether said two $15,000 notes so secured by trust deed had been paid; that said Henry H. Walker then informed him that it was the duty of Samuel J. Walker to pay said notes, and the said Samuel J. Walker then informed him that the defendant held said notes, and that the same were not paid in full,—that there was then due the defendant the sum of $20,000 on said notes, and that he, the said Samuel J. Walker, was unable to pay the same; that on the .... day of February, A. D. 1874, the plaintiff applied to the defendant, and inquired whether said two $15,000 notes had been paid, and was informed by its president that they were unpaid, and held by the defendant, and that there was due upon them $20,000, all of which, plaintiff charges, was known by the defendant to be false; that the plaintiff, not knowing that the notes had been paid, and fearing that the property might be sold under the trust deed, and so lost to him, and relying upon the defendant's false and fraudulent representations, did, on or about April 4, A. D. 1874, pay said defendant said sum of $15,000 in full payment of said claimed indebtedness on said last mentioned notes, and for a release of said property from

said deed of trust. Plaintiff further claimed that knowledge of the payment of the notes by Walker was fraudulently concealed from him by the president of the defendant.

Evidence was given on behalf of both plaintiff and defendant. The fact was proved that Walker paid, substantially as claimed by plaintiff, the original notes for the payment of which the promissory notes, and deed of trust securing them, on this property, were pledged as collateral security; and then defendant gave in evidence the following agreement:

"CHICAGO, *July 7, 1869.*

"Whereas, the undersigned has heretofore, and intends hereafter, to borrow money from the International Mutual Trust Company, on his own note or notes, or the note or notes of H. H. Walker; and whereas, to secure the payment of such note or notes, he has heretofore, and intends hereafter, to deposit collateral securities; and whereas, such collaterals were given, and are hereafter to be given, to secure the payment of specific notes; now, therefore, for the purpose of more fully securing the said International Mutual Trust Company, I do hereby agree that all and singular the collaterals by me given, or to be given as aforesaid, shall, at the option of said International Mutual Trust Company, apply generally to all notes held at any time by said trust company, executed by me or said H. H. Walker, and shall also apply and be considered collaterals to secure the payment of any and all notes negotiated for my account by said trust company.

SAMUEL J. WALKER."

Evidence was given, showing that at the time Walker paid off the two notes for which the notes and deed of trust were pledged as collateral, Walker was indebted to the defendant many thousands of dollars more than the amount of these notes, and that he so continued to be indebted to it,—and there is no evidence that this agreement was subsequently cancelled. The notes and trust deed were found in the possession of the bank, uncancelled.

Samuel J. Walker testified: "I have no recollection whether these two $15,000 notes were left at the bank, or delivered to me and marked 'cancelled' when the $20,000 was paid. (April 11, 1873.) I have taken up collaterals when I paid paper, and sometimes I left them. I have no recollection whether I gave directions for a release deed to issue to Bartelott. I really have no recollection about it. It would be very difficult to say whether I took them away or left them. I was in the habit of leaving them occasionally, and taking them away sometimes. It would be almost impossible to state an impression. I haven't them." He further testified that the bank held a large amount of doubtful notes that were not specially secured,—some $80,000 or $90,000 in amount. He further added: "I knew Lowenthal was endeavoring to realize all he could on the securities, and was endeavoring to realize as fast as possible. I did not enter into any conspiracy with Lowenthal to swindle Bartelott. I supposed, at the time Bartelott paid the $15,000, that the bank was entitled to $20,000. At the time this $15,000 was paid, there was a great deal more than this due the bank on my notes. The bank quite often carried what was known as my cash memoranda,—$10,000 or $20,000,—at various times; short loans carried a day or two. If I had gone in there and paid this $20,000, and said nothing, and left the collaterals without asking to give them up, they could, I suppose, under the agreement, claim afterwards to have held them in a general way. I said I did not recollect whether, in this case, I took them up or left them."

Lowenthal testified that upon the payment of the principal notes, on September 11, 1873, the collaterals were retained as general security for all Walker's indebtedness, which then amounted to about $200,000, of which about $100,000 had no specific security.

At the conclusion of the evidence, on motion of the defendant's counsel, the court instructed the jury to find for the

defendant; and the jury so finding, the court thereupon rendered judgment upon the verdict, after overruling a motion of the plaintiff for a new trial. This judgment, on appeal to the Appellate Court, was affirmed, and the case is now here by appeal from that judgment. Errors are assigned, properly raising the questions considered in the opinion.

Mr. W. E. HUGHES, and Messrs. LEAMING & THOMPSON, for the appellant:

A demurrer-to the evidence admits not only the facts stated in such evidence, but also every conclusion which a jury might fairly or reasonably infer therefrom. *Schuchardt* v. *Allens,* 1 Wall. 369; *Hansborough's Exrs.* v. *Thorm,* 3 Leigh, 147; *Park* v. *Ross,* 11 How. 362; *Phillips* v. *Dickerson,* 85 Ill. 11.

Had the defendant in this case offered a demurrer to the evidence at the close of plaintiff's case, the latter would have been entitled to a judgment. So conclusive was the plaintiff's evidence, that counsel for the defendant would not admit it, but immediately offered evidence, and when they got through with their proof they asked the court to grant an instruction which made it imperative upon the jury to find a verdict for the defendant, and which has in many States superseded the ancient practice of a demurrer to the evidence. It answers the same purpose, and should be tested by the same rules. (*Phillips* v. *Dickerson,* 85 Ill. 11; *Park* v. *Ross,* 11 How. 362.) And, therefore, under those authorities, it is clear that the Superior Court erred in giving such an instruction to the jury after the defendant had offered evidence on its own behalf.

This court has repeatedly held, that where a plaintiff has offered evidence which tends to establish his right to recover, the court has no right to take the evidence from the jury, or to instruct them to find one way or another. It has always been held by this court, that it is the province of the jury to weigh the evidence, and the court has no right to invade

their province.   *Railway Co.* v. *Mills,* 105 Ill. 63 ; *Holmes* v. *Railroad Co.* 94 id. 439.

The following cases in this court discuss the power of the trial court to instruct a jury to find for the defendant where there was a total failure on the part of the plaintiff to support, by proof, his case as pleaded.   *Railway Co.* v. *Lewis,* 109 Ill. 120 ; *Simmons* v. *Railroad Co.* 110 id. 340 ; *Abend* v. *Railroad Co.* 111 id. 202 ; *Ayers* v. *City of Chicago,* id. 406 ; *Alexander* v. *Cunningham,* id. 511.

The motion to instruct the jury to find for the defendant, was in the nature of a demurrer to the evidence, and hence admitted not only all that the evidence proved, but all that it tended to prove.   *Ward* v. *City of Chicago,* 15 Bradw. 98 ; *Frazer* v. *Howe,* 106 Ill. 563 ; *Pennsylvania Co.* v. *Conlan,* 101 id. 93.

It is not within the province of the judge, on such a motion, to weigh the evidence, and ascertain where the preponderance is.   This function is limited strictly to determining whether there is, or not, evidence legally tending to prove the facts affirmed.   *Hubner* v. *Feige,* 90 Ill. 208 ; *Crowe* v. *People,* 92 id. 231 ; *Pennsylvania Co.* v. *Stœlke,* 104 id. 201.

Messrs. ROSENTHAL & PENCE, for the appellee :

It is too late to make the point that there was no general issue filed to the amended declaration.   *Vasey* v. *Board of Trustees,* 59 Ill. 188 ; *Webb* v. *Insurance Co.* 5 Gilm. 225.

The only question this court can examine in this case is, whether, under any circumstances, the trial court can take a case away from the jury, and it is not for this court to consider whether in this particular case it had such right, for that would be determining and passing upon the effect of the evidence in this case, which this court has no power to do. *Bridge* v. *Comrs. of Highways,* 101 Ill. 518.

The trial court has the legal right, after the evidence is all in on both sides, to take a case away from the jury, or direct

the jury to find for the defendant. *Martin* v. *Chambers*, 84 Ill. 579; *Polman* v. *Johnson*, id. 269; *Phillips* v. *Dickinson*, 85 id. 11; *Frazer* v. *Howe*, 106 id. 573; *Simmons* v. *Railroad Co.* 110 id. 340; *City of Mattoon* v. *Fallin*, 113 id. 249; *Reed* v. *Inhabitants*, 8 Allen, 524; *Pleasants* v. *Fant*, 22 Wall. 120; *Randall* v. *Railroad Co.* 109 U. S. 478; *Herbert* v. *Butler*, 97 id. 318; *Railroad Co.* v. *Munson*, 14 Wall. 342.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The Appellate Court held, that since there is conclusive evidence showing that, on the 11th day of September, A. D. 1873, at the time that Samuel J. Walker paid the appellee the $20,000, in satisfaction and discharge of the principal notes for which the two $15,000 notes, secured by the trust deed, were held as collateral security, Samuel J. Walker was indebted to the appellee to the further amount of nearly or quite $200,000, on a large amount of which it held no specific security, the appellee was entitled to still retain the two $15,000 notes, and trust deed securing them, as collateral security for such further indebtedness, by virtue of the agreement made and reduced to writing between the appellee and Samuel J. Walker, on the 7th day of July, A. D. 1869, unless the appellant has proved that at the time that Walker made such payment there was a special arrangement or agreement between said Walker and appellee, to the effect that the payment of the principal notes, in this instance, operated as a redemption of the collateral; that there is no evidence in the record tending to prove such arrangement or agreement, and that, therefore, the Superior Court properly directed the jury to find in favor of the appellee.

The questions presented for our consideration by the arguments before us, are: First, even assuming that the Superior Court did not misjudge as to the character and effect of the evidence, was it competent for that court to instruct the jury to find in favor of the appellee, after evidence had been in-

troduced by appellee to sustain the defence; second, if it was competent to so instruct the jury, then, upon whom was the burden of proof, on the question of whether it was agreed and intended by the parties that the payment of the $20,000 notes by Walker should discharge the two $15,000 collateral notes, and release the trust deed securing them; third, if the burden was on appellant, then was there any evidence, proper for the consideration of the jury, tending to prove such agreement and intention.

*First*—Although we have said that motions to exclude the entire evidence from the jury, and motions to instruct the jury to find for the defendant, are in the nature of demurrers to evidence, yet this relates rather to the mode of viewing the evidence, than to the time or mode of interposing such motions.   They are in the nature of demurrers to evidence, in that they admit not only all that the testimony of the plaintiff proves, but also all that it tends to prove. (*Frazer* v. *Howe et al.* 106 Ill. 573.)   But none of the technical particularity is required in making such motions, that is required in demurrers to evidence, and no judgment is rendered against the defendant on disallowing the motion.   They are usually informal, and most frequently made by simply presenting to the court an instruction, to be given or refused, instructing the jury that the evidence is excluded, or that they should find for the defendant, or, it may be, both.   It would certainly be proper, and, where the motion can rightly be sustained, most convenient, to present the motion at the conclusion of the plaintiff's evidence, so as to at once terminate the trial; but we know of no reason or authority why it may not be made after evidence is heard on behalf of the defendant.   At most, so far as is now perceived, delaying the motion until after the introduction of defendant's evidence could only affect the question of costs incident to the examination of the defendant's witnesses,—and this, obviously, would appeal only to the discretion of the court, on a motion to re-tax costs, as,

in case of the examination of unnecessary witnesses. In the following cases the practice seems to have been to entertain the motion after hearing the evidence of the defendant: *Reed* v. *Inhabitants,* 8 Allen, 524; *Improvement and Railroad Co.* v. *Munson,* 14 Wall. 342; *Randall* v. *Baltimore and Ohio Railroad Co.* 109 U. S. 478; *Herbert* v. *Butler,* 97 id. 318. And that practice is recommended by this court in *City of Mattoon* v. *Fallin,* 113 Ill. 249.

*Second*—The declaration contained the common counts, only. The plea of the Statute of Limitations affirmed, generally, that any cause of action that the plaintiff might have under those counts was barred. The replication set out specific facts constituting a cause of action, and that knowledge of such facts was concealed from appellant. This was traversed by the rejoinder. The burden was then upon the appellant to prove his plea. If a thing alleged as a fact never existed, it would seem clear that knowledge of it could not have been concealed; and so, in order to sustain his plea, it was incumbent on him to prove, first, the existence, and then the concealment, of the alleged facts. It was incumbent on appellant to thus particularly reply. (*Beatty* v. *Nickerson,* 73 Ill. 605.) And the same necessity exists for specific proof as for specific allegation. (*Watt* v. *Kirby,* 15 Ill. 200.) But apart from this, the defendant pleaded to the original declaration, that it, "together with said Berthold Lowenthal, did not undertake and promise, in manner and form," etc. This plea was not sworn to, and therefore could but amount to the general issue. When a *nolle prosequi* was entered as to Lowenthal, so much of the plea as alleged that, "together with said Berthold Lowenthal," became surplusage. It may be that when the amended declaration was filed, appellant might have required a new and more specific plea; but he did not do so. He neither demurred to this plea, nor asked that appellant re-plead. Three trials were had in the Superior Court, and the cause was three times passed upon by the Ap-

pellate Court, without any objection ever being urged in either court to the sufficiency of this plea. The Appellate Court, in 11 Bradw. 620, and again in 14 Bradw. 158, expressly characterize it as the general issue. Even if we thought that characterization inaccurate, which we do not, it is now too late to raise any question upon it. The plea sufficiently put in issue the allegations of the declaration, and imposed the burden upon appellant of proving them. If deemed obnoxious to a demurrer, appellant should have demurred to it. If deemed inapplicable to the amended declaration, he should have moved to strike it from the files.

*Third*—We said in *Frazer* v. *Howe, supra,*—and that ruling has been since approved in *Simmons* v. *Chicago and Tomah Railroad Co.* 110 Ill. 340, and other cases,—that the function of the judge on such a motion "is limited strictly to determining whether there is or is not evidence legally tending to prove the fact affirmed,—*i. e.,* evidence from which, if credited, it may reasonably be inferred, in legal contemplation, the fact affirmed exists, laying entirely out of view the effect of all modifying or countervailing evidence." In *Simmons* v. *Chicago and Tomah Railroad Co. supra,* this language was used: "We think the more reasonable rule, which has now come to be established by the better authority, is, that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff, that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." And this language was referred to with approval in *Lake Shore and Michigan Southern Railway Co.* v. *O'Conner,* 115 Ill. 261. In *Doane* v. *Lockwood,* 115 Ill. 494, it was said: "Instructing the jury to find the issues for defendant, is, in effect, the same thing as sustaining a demurrer to the evidence. In either case the court holds, that, admitting all the evidence tends to prove, it is not sufficient in law to sustain the action."

Since it was not intended in this case to overrule *Simmons* v. *Chicago and Tomah Railroad Co. supra*, it is apparent that "evidence tending to prove," means more than a mere scintilla of evidence, but evidence upon which the jury could, without acting unreasonably in the eye of the law, decide in favor of the plaintiff, or the party producing it. It is not intended by this practice that the function of the jury to pass upon questions of fact is to be invaded, any more than it is intended that such function is to be invaded by a motion to set aside a verdict, and for a new trial, upon the ground of the want of evidence to sustain the verdict. In neither case is the court authorized to weigh the evidence and decide where the preponderance is. Hilliard on New Trials, p. 339, sec. 9, *et seq.; Johnson* v. *Moulton*, 1 Scam. 532; *Lowry* v. *Orr*, 1 Gilm. 70; *Morgan* v. *Ryerson*, 20 Ill. 343.

What, then, is the effect of the evidence? We have held that this identical contract between Samuel J. Walker and appellee, of July 7, 1869, authorized appellee to hold all collaterals pledged for particular loans then made, for the payment of all notes held by the appellee against said Walker, regardless of the manner in which they were secured. *Buchanan* v. *International Bank*, 78 Ill. 500; *Walker et al.* v. *Abt et al.* 83 id. 226.

If this contract was subsequently cancelled, it devolved upon appellant to prove it. It is not pretended that there is any evidence in that respect. When Walker made payment of the $20,000 notes on the 11th day of September, A. D. 1873, he did not take up the two $15,000 collateral notes, and trust deed securing them. They are produced by the appellee, uncancelled, and if there was any agreement between Walker and appellee that by paying the $20,000 these two $15,000 notes were also to be cancelled and the trust deed released, it devolved upon appellant to prove it. There is absolutely no proof to this effect in the record. What Walker may have intended in this respect, is, obviously, un-

important, in the absence of proof showing that such intention was shared by appellee. An attempt was made to use a deposition of Lowenthal, taken in a case between appellee and another party, as original evidence in this case. Without conceding that it would have afforded material proof on the question we are considering here, if admissible as original evidence, we content ourselves with saying that Lowenthal is not a party to this suit, and that therefore his statements in a deposition in another suit could only be admissible in this suit for the purpose of contradicting him—a sufficient foundation having first been laid for that purpose. It can not be used as original affirmative evidence in this case, and this is so apparent that it can need no discussion. Walker is the only other person whose testimony was taken, who could have had any knowledge of such an agreement, if made, and his testimony proves nothing in that respect. Mere suspicions or conjectures are inadequate to sustain a legal judgment.

We concur with the reasoning of the Appellate Court, and affirm its judgment. *Judgment affirmed.*

Mr. CHIEF JUSTICE SCOTT, dissenting.