## W. SPENCER RYAN
### v.
## J. SHIRLEY HAMILTON.

*Opinion filed October 26, 1903—Rehearing denied December 3, 1903.*

1. INJUNCTION—*when contract in restraint of trade may be enforced by injunction.*   A contract not to engage in a particular business, if it is founded upon legal consideration and is reasonable with respect to its limitation of territory, may be enforced by injunction.

2. SAME—*adequacy of consideration is not a question for investigation on bill for injunction.*   Upon a bill to enjoin a breach of a contract not to engage in a particular business, if the court is satisfied, from the evidence, there is some legal consideration for the contract, it will not go into the subject of the adequacy of such consideration, where no question of fraud is involved.

3. CONTRACTS—*a contract need not state what the consideration is.* Since the true consideration for a contract may be shown in a proceeding to enforce the same, it is not necessary that a contract in limited restraint of trade shall state the consideration for the agreement.

4. SAME—*money consideration is not essential to validity of contract.* It is not essential to the validity of a contract in partial restraint of trade that there be an actual money consideration passing between the immediate parties.

5. SAME—*courts will uphold, rather than defeat, contracts fairly made.* In interpreting written contracts fairly entered into, it is the duty of courts to uphold, rather than defeat, them, and to give them a reasonable and sensible construction, so as to carry out the intention of the parties as far as possible.

6. SAME—*when contract is not too indefinite for enforcement in equity.* An agreement not to practice medicine within eight miles of a designated point without the obligee's consent, "unless forced to by some unforeseen circumstances," is not so indefinite as to prevent its enforcement by a court of equity.

7. EVIDENCE—*when complainant need not prove negative allegation.* Complainant in a bill to enjoin the breach of a contract not to practice medicine within limited territory, by alleging that the defendant was not forced to resume practice "by some unforeseen circumstances," as was provided in the contract, does not assume the burden of proving such allegation, further than by showing that defendant resumed practice after an unsuccessful attempt to form a partnership with complainant or buy out his business.

*Hamilton* v. *Ryan*, 103 Ill. App. 212, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Mercer county; the Hon. FRANK D. RAMSAY, Judge, presiding.

This suit was begun by appellant, W. Spencer Ryan, on November 22, 1900, filing his bill for injunction in the Mercer county circuit court, praying an injunction against J. Shirley Hamilton, the appellee, restraining him from practicing general medicine in or within eight miles of the village of Viola, in Mercer county, Illinois, in violation of the following contract:

*"12/1, 1899.*

"The undersigned, J. S. Hamilton, M. D., on this date, December 1, 1899, agrees never again in the future, either separately or as one of a firm, to practice general medicine in or within (8) eight miles of Viola, Mercer county, Illinois, without the consent of Dr. W. S. Ryan, while said Ryan is located in Viola or within (8) eight miles of Viola, Mercer county, as a practicing physician in general medicine, unless forced to by some unforeseen circumstances, in which case I agree to pay Dr. Ryan a reasonable sum for his business interests.

Attest: S. C. FUGATE."        J. S. HAMILTON.

To the bill the appellee demurred, and upon demurrer being overruled, answer was filed. The case was thereupon referred to the master in chancery to take proofs and report findings of law and fact. In addition to the general findings of the master were the two following specific findings:

"*First*—That the contract in question is more than a mere moral obligation on the part of the defendant to perform. Though perhaps inadequate and remote, the consideration is sufficient, in law, to sustain an action at law.

"*Second*—That it is not such a contract as equity will enforce by injunction."

To these findings both parties objected, which objections were overruled by the master. The exceptions were renewed in the circuit court, where the cause was heard

at the December term, 1901.    The findings of the master
were by the chancellor modified and a decree rendered
in favor of the appellant.    According to the decree the
chancellor found: "(1) That each and every material aver-
ment of the amended bill is true as therein stated;  (2)
that in the autumn of 1899 the defendant, for a valid con-
sideration, entered into a contract with the complainant
as follows: (Reciting the contract above set out;) (3) that
from the time said contract was executed until March 1,
1900, defendant refrained from the practice of medicine
in Viola, and then commenced to practice without the
consent of the complainant, and without being forced so
to do by some circumstances unforeseen by the parties
to said contract at the time it was entered into."    From
this decree appellee prosecuted an appeal to the Appel-
late Court for the Second District, which court reversed
the decree of the circuit court and remanded the cause
to the circuit court, with instructions to dismiss the bill
for want of equity.    From this judgment appellant prose-
cutes the present appeal.

The facts out of which this controversy grows, as
shown by the evidence, may be briefly stated, as follows:
Prior to September, 1899, one H. J. Stewart and J. Shirley
Hamilton (appellee) were engaged jointly in the practice
of medicine at Viola, Mercer county, Illinois.    Stewart
owned the office, which was on leased ground, the office
furniture and a buggy, and also other articles of personal
property used in and about the practice of the parties.
About the date above mentioned Stewart went to Chi-
cago for the purpose of studying to be a specialist in the
treatment of the diseases of the eye, ear, nose and throat.
Before leaving Viola he arranged with Hamilton to sell
out all his interests at Viola, and there is considerable
evidence to show that Stewart and Hamilton had ar-
ranged, before Stewart left, that they each should go to
Chicago, prepare themselves along the special line above
mentioned and then engage in a partnership for the prac-

tice of their specialty. After Stewart's departure Hamilton communicated with Ryan, who lived at Cable, with a view of selling out the interests of Stewart, and, as Ryan claims, the interests of himself also, at Viola. As a result of these negotiations Ryan finally agreed with Mrs. Stewart to pay $780 for all of Stewart's interests, and S. C. Fugate, a justice of the peace residing in Viola, drew up a contract to that effect. About the same time a contract similar to the one in question in this suit was executed by Stewart, and, when it was returned to Ryan, Ryan also drew up the contract in question here for Hamilton to sign, which he did. Hamilton and Ryan, according to their arrangement at that time, continued to work together until October 27, 1899, when Ryan formed a partnership with a Dr. Packer, and shortly thereafter Hamilton went to Chicago, where he took up the study of his specialty. About January 1, 1900, Stewart and Hamilton went to Peoria and there formed a partnership for the practice of their specialty, but continued there only about a month, when they concluded that the prospects were not favorable for them there, and Stewart went to Kewanee and engaged in practice and Hamilton went to Elmwood and was about to form a partnership there when he received a request to come to Viola, which he complied with and there entered into negotiations with Ryan with a view of forming a partnership. These negotiations, however, proved unsuccessful, and about March 1, 1900, he went into the practice of medicine at said place on his own account. Before doing so, however, and after the partnership negotiations proved unsuccessful, Hamilton offered Ryan $780, concerning which he testified: "When I offered to pay Dr. Ryan the $780, I had in mind this contract that I had made not to practice at Viola, and made the offer for the purpose of relieving any liability I might have on that. When he refused the offer of $780 I thought I had a right to go ahead and practice there."

GUY C. SCOTT, for appellant:

A contract in restraint of trade at a certain place or within a certain territory, where the extent of the territory is no greater than is necessary to protect the covenantee, is valid, and may be enforced by injunction. Courts will not inquire whether the consideration is adequate or equal in value to what the party loses by the restraint. If the contract is supported by a valid consideration, whether adequate or not, it will be enforced, both in law and in equity. *Linn* v. *Sigsbee*, 67 Ill. 75; *Cobbs* v. *Niblo*, 6 Ill. App. 60; *Hursen* v. *Gavin*, 59 id. 66; 162 Ill. 377.

An agreement in restraint of trade which was a part of the inducement to a purchaser to make a purchase which he did make, is based upon a sufficient consideration, and will be enforced in equity by injunction. *Hursen* v. *Gavin*, 162 Ill. 377.

Such contracts in restraint of trade as are valid may be enforced in equity like other contracts, and breaches of them will be restrained by injunction, on the ground that no other remedy is adequate. *Cowan* v. *Fairbrother*, 32 L. R. A. 836; *Thompson* v. *Andrus*, 41 N. W. Rep. 683; 3 Am. & Eng. Ency. of Law, (1st ed.) p. 885, and note.

A contract in restraint of trade, whereby one obligates himself to refrain from practicing a profession or carrying on a business, is not vitiated by the facts that the contract is not accompanied by the sale of any property, or is independent of and in no way connected with the sale of any property. *Wood* v. *Whitehead*, 59 N. E. Rep. 357; *Tillinghast* v. *Boothby*, 37 Atl. Rep. 344.

McARTHUR & COOKE, and BASSETT & BASSETT, for appellee:

The consideration for a contract in restraint of trade must be an actual and a valuable consideration, and in equity, generally, must be adequate. A mere technical consideration is not sufficient, and if grossly inadequate will be disregarded and injunction or specific perform-

ance will be denied.   The law presumes such contracts void until the consideration and reasonableness of the limitations are shown, and the rules of strict construction are applicable.   1 Parsons on Contracts, 429; 3 id. 361; *Walters* v. *Short,* 5 Gilm. 252; *Lear* v. *Chouteau,* 23 Ill. 37; *Chappel* v. *Brockway,* 21 Wend. 157; *Ross* v. *Sadgbeer,* 21 id. 165; *Highman* v. *Harris,* 108 Ind. 246; 1 Beach on Contracts, sec. 149; 2 id. secs. 1564-1570; *Talcott* v. *Brackett,* 5 Ill. App. 60; 2 High on Injunctions, sec. 1179; Waterman on Specific Perf. sec. 146; Pomeroy on Contracts, sec. 57.

If the contract be so uncertain that its enforcement cannot be rendered certain and efficient by the decree, specific performance will be refused and the parties will be left to their remedy at law.   The right of the respective parties to the equitable remedy must be mutual. *Bowman* v. *Cunningham,* 78 Ill. 48; *Hamilton* v. *Harvey,* 121 id. 469; *Carson* v. *Davis,* 171 id. 497; *Canal Comrs.* v. *Sanitary District,* 191 id. 338; 2 High on Injunctions, sec. 1178; 1 Beach on Contracts, secs. 72-76; 2 id. secs. 1765, 1766.

The contract must be fair, equal and just in its terms, free from fraud, and its specific performance not harsh or oppressive.   The specific performance of this contract should not be enforced in equity because it would be harsh, unfair and a hardship upon the appellee on account of events subsequent to its execution and the act and conduct of the appellant.   Inadequacy of consideration is considered, in equity, an evidence of fraud.   *Stone* v. *Pratt,* 25 Ill. 25; Pomeroy on Contracts, secs. 183, 185, note 1, and sec. 187, note 2; 2 Story's Eq. sec. 750; *Canal Comrs.* v. *Sanitary District,* 191 Ill. 326; Pomeroy on Specific Perf. secs. 175, 177, 180, 183, 185, 192, 193, 195-307.

The remedy on this contract, if it were a valid contract, upon a valuable consideration, is at law for the damage therein provided for.   Part of the contract cannot be enforced without regard to other provisions.   It must be construed to give all parts effect.   When damages are stipulated by the parties, the remedy is selected.

It is not necessary that the damages should be liquidated to enable the plaintiff to maintain an action for recovery. 2 Beach on Contracts, sec. 1570; *Martin* v. *Murphy*, 129 Ind. 464; *Stow* v. *Robinson*, 24 Ill. 532; *Linn* v. *Sigsbee*, 67 id. 75; *Welty* v. *Jacobs*, 171 id. 624; *Gilman* v. *Dwight*, 13 Gray, 356; *Dills* v. *Doebler*, 62 Conn. 366.

Contracts for the sale of good will, unconnected with the business and premises of which it is an incident, can not be enforced. Pomeroy on Contracts, sec. 306; Waterman on Specific Perf. sec. 35.

Mr. JUSTICE RICKS delivered the opinion of the court:

Appellee contends that the judgment of the Appellate Court should be upheld, and that the complainant below, as a matter of law and justice, is not entitled to the relief he prays, and to support his position argues that there is not sufficient consideration to support the contract in question; that it is not sufficiently fair and certain to be enforced in equity; that if appellant has any remedy it is only a legal one and not enforceable in equity.

The principles of law applicable to this case are the same as those governing the specific performance of contracts in restraint of trade. That contracts in general restraint of trade are generally held to be illegal is beyond controversy. But the rule admits of well defined exceptions, and among the exceptions are contracts of the kind and character presented in this case. Contracts of this class, where the limitation as to territory is reasonable and there exists a legal consideration for the restraint, are valid and enforceable in equity, and in such cases relief by injunction is customary and proper. In all such cases it is not the business of a court to inquire whether the consideration is adequate or of equal value to that which the party loses by the restriction. In cases of this character it is impossible for courts to tell how valuable to the complainant or how injurious to the defendant may be the restraint sought to be imposed. It

is sufficient to uphold such contracts if the court arrives
at the conclusion that there is, as a matter of fact, some
legal consideration; but the adequacy of the considera-
tion is within the exclusive dominion of the parties where
they contract freely and without fraud. *Linn* v. *Sigsbee,*
67 Ill. 75; *Hursen* v. *Gavin,* 162 id. 377; *Doty* v. *Martin,* 32
Mich. 463; *Eisel* v. *Hays,* 40 N. E. Rep. 119; *Beatty* v. *Coble,*
41 id. 590; *Up River Ice Co.* v. *Denler,* 114 Mich. 296; *McCurry*
v. *Gibson,* 108 Ala. 451; *French* v. *Parker,* 16 R. I. 219.

It is contended, however, by appellee, that there is no
sufficient consideration to support the contract here in-
volved. That is a matter about which there is a conflict
of evidence. Ryan, the appellant, contends that Ham-
ilton, the appellee, agreed with him that if he (Ryan)
would purchase the property which he did purchase, both
Stewart and Hamilton would refrain from practicing in
Viola and vicinity, and that both Stewart and Hamilton
were to sign the same, or similar agreements to that ef-
fect. Hamilton contends that the contract signed by him
was not signed until after the purchase made by Ryan
was consummated, and then only as an accommodation
to Ryan to enable him to procure a partner. We think
there is considerable evidence corroborative of appel-
lant's contention, and the master who took and reported
the testimony given in the case, and the chancellor who
entered the decree in the lower court, each found that
there was a sufficient consideration to support the con-
tract made.

The evidence discloses that Dr. Stewart, of the firm
of Stewart & Hamilton, was the original member of that
firm and had practiced medicine in Viola for some four
or five years and that appellee had been there but about
nineteen months; that Dr. Stewart found that his health
was not such as would justify him in remaining in the
general practice and had determined to specialize, and
for that purpose had in August, 1899, gone to Chicago
and entered upon a course of study; that Dr. Stewart

owned the building in which the business was conducted, which was situated on leased ground; that he also owned a horse and buggy, office fixtures, etc., used in the business. His determination to retire from the general practice would, of necessity, sever the partnership between him and appellee unless the business could be disposed of, so that appellee could also specialize and they in their new line arrange another partnership, and there is abundant evidence that this was appellee's desire, as it is disclosed that as early as July, 1899, and from that time on to the time he left Viola, appellee talked to various persons who held business relations with him and Dr. Stewart, of his intention to become a specialist, and in these talks usually referred to the firm of Stewart & Hamilton, and of their future course. With these things in his mind appellee caused word to be carried to appellant, where he was engaged in practice at Cable, that the business was for sale, and early in September appellant went to Viola and met appellee, and was taken by appellee to Dr. Stewart's house and was introduced to his wife and remained there over night. It is further shown that the appellee was then endeavoring to sell Dr. Stewart's property, and there can be no doubt from a reading of the evidence that he was holding out to appellant that if he should become the purchaser of that property he would succeed to the business of the firm. No arrangement was made at that time, except that it was understood that appellant should return to Viola in a short time and participate in the practice with appellee, in order to determine its extent and character before he should conclude to make the purchase, and in September he did come and remained about two weeks, until he became sufficiently acquainted with the business to warrant him in making the purchase. Appellant and appellee continued negotiations until it was practically agreed that appellant should pay $800 for the property, with the condition that both Drs. Stewart and Hamilton should

agree that if appellant did become the purchaser they would not again resume practice in Viola or in the vicinity thereof. When the negotiations reached this stage the appellee turned appellant over to Mrs. Stewart, who still resided in Viola and who was acting for her husband, and in view of the fact that the house was upon leased premises she agreed to deduct $20 from the price that he had agreed to pay and accept $780 for the property, and caused papers to be executed transferring the property, and the lease for the lot upon which the house stood, to appellant, and also sent an agreement in practically, if not identically, the same words to be executed by Dr. Stewart as the agreement of Dr. Hamilton which forms the basis of this suit. When these papers were returned they were put in the hands of appellee, and appellant then gave his notes for the $780, which were delivered to appellee and by appellee placed in the bank for Dr. Stewart, and the contract of sale and the assignment of the lease, and the agreement signed by Dr. Stewart with reference to the practice, were turned over to appellant by appellee. Appellant testifies that at the same time appellee executed the instrument in controversy. This appellee denies, saying that it was not executed, in fact, until three or four days after that time. In his answer he states that it was not executed until December 1, but in his testimony he says that it was within three or four days of the time of the execution of the notes, and that it was not talked of until the time it was signed, and in no way entered into any part of the negotiations between him and appellant with reference to the sale of the property of Dr. Stewart. The evidence discloses that the purchase by appellant of the Stewart property was made and the notes given in view of appellee's ceasing to practice and the business of Dr. Stewart being the business of the firm, and when speaking to persons who testified in the case with reference to his intention to leave Viola and of the desire of the firm to sell the business,

Hamilton spoke of it, in a general way, as the business
and property of the firm. It also appears, to one James
R. Blinkensopp, who was the collector for the firm of
Stewart & Hamilton, appellee said, in a conversation be-
tween the 16th of September and the latter part of that
month, that Dr. Ryan had bought him out and that he
and Stewart were going away together; that they did
not know just where they would locate, but maybe in
Bloomington, Peoria or Davenport. George M. Babcock,
another witness, testified that appellee, as early as July,
told him that he was going to take up the work of a
specialist of the eye, ear, nose and throat, and that they
wanted to sell their practice, and that in the conversa-
tion Dr. Hamilton talked with him about signing the
agreement not to practice there in case they sold. This
witness was a dentist and had made a similar agreement
in Rock Island, and advised appellee to be careful about
making any such agreement, and advised him not to sign
an agreement of that character, but appellee said that
he knew what he wanted to do, and if he couldn't make
it with the eye and ear business he could go some place
else to practice; that he could go back to Indiana and
practice there. This latter conversation was had before
Dr. Ryan came to Viola at all. E. S. Harkrader, another
witness, testified that he was the publisher of a news-
paper in Viola, and that on Tuesday or Wednesday before
the 27th of September, 1899, he had a conversation with
appellee in appellee's office, in which appellee said the
firm had sold out to Dr. Ryan; that he (appellee) was
going to take a special course; that he did not know
where he would locate. This witness fixed the time of
the conversation by the date of his paper, which con-
tained a notice of the sale of the business of Stewart &
Hamilton to Dr. Ryan, written by the witness at the time
of this conversation. To Mrs. Effie Hoover, a patient
of the firm of Stewart & Hamilton, whose child he was
visiting in the fall of 1899, appellee said that he and

Dr. Stewart were going away; that they had not made up their mind yet where, but they had several places in view; that he hated to go, but Stewart's health was not good, and that the people were getting as good a doctor in the person of Dr. Ryan.

The evidence shows that appellee remained in Viola until about the 23d of October,—until he disposed of such personal effects as he had. These he sold to Dr. Packer, who became the partner of appellant, and at the time of making the sale to Dr. Packer the latter insisted upon his signing an agreement not to again engage in practice at that place, and appellee stated that it was not necessary, as he had already made such an agreement with the appellant. Appellee then went to Chicago and took a special course, after which he and Dr. Stewart established a business at Peoria as specialists. They remained there but about a month, as the business did not seem to prosper, and Dr. Stewart went to Kewanee and appellee went to Elmwood and was about to form a partnership there with Dr. Hoyt, and while engaged in the negotiations for that partnership he received a telegram from Dr. Stewart, who was in Viola, requesting him to come there. He went to Viola and attempted to form a partnership with appellant. Failing in this, he offered appellant $780 for the property that appellant had purchased of Stewart, and the business. This appellant declined, and appellee, in disregard of his agreement, entered into general practice at that place.

Appellee, himself, seems to have recognized that a binding obligation rested upon him by virtue of said contract, for when he returned to Viola and was unsuccessful in effecting a partnership with appellant, he then offered to pay appellant $780, which, as he states, was for the purpose of relieving himself of any liability which he may have incurred by reason of said contract. Under such circumstances it cannot be reasonably contended that there exists any warrant for us now to hold that

there was no consideration for the contract that is here sought to be enforced, and, as we have already stated, if there was a legal consideration to support said contract the adequacy of such consideration is not for our determination, no fraud being alleged, and relief to the party injured by reason of the non-fulfillment of such contract, and the granting of an injunction restraining the adverse party from violating his agreement, come within the domain of equity.

The bill avers that Hamilton was not forced to return to Viola because of any unforeseen circumstances, which averment the answer denies, but, as we regard the evidence, the denial in the answer is not sustained. There is no evidence that appellee might not have engaged profitably in the practice of his profession at other places than Viola. He was about to do so at Elmwood. He had gone into business at Peoria, which location he tried for only a month, and failing to form the kind of a partnership with Ryan that he desired, he offered to pay him $780, so that it appears he was not out of money, and was not forced to return to his former practice at Viola by reason of pecuniary or other unforeseen necessity.

It is urged, however, that as appellant alleged in his bill that appellee was not forced to return to his former practice by reason of unforeseen necessity, appellant was bound to make the burden of proof upon that allegation. This was in the nature of a negative allegation, the proof of which rested within the especial knowledge of appellee. Appellant could not be presumed to know the especial things that moved appellee to action. We think it sufficient that appellant showed that appellee returned and engaged in the practice of his profession after making an effort to form a partnership with appellant and an effort to purchase the business of appellant, and if there was anything other than the ordinary business motives that prompted him, it was the duty of appellee to have disclosed it. *Cole* v. *Cole*, 153 Ill. 585.

It is also said that the contract is so uncertain that a court of equity cannot enforce it, and that one of the particular features of uncertainty is, that there is no mutuality in the contract and that there is nothing that appellant was to do stated in the contract. If the allegations of the bill are true and the consideration was that appellant should become the purchaser of the property that he did purchase from Stewart so that appellee might be enabled to carry out his purpose of becoming a specialist and enter into business with Dr. Stewart, then, as the evidence discloses that appellant performed all that he was to perform, there was nothing to put in the contract to be done by appellant. It is well settled in this State that the true consideration for a contract or agreement may always be shown, whether one is shown in the contract or not; and, as we have said, the consideration for appellee's agreement being that appellant would make the purchase from Dr. Stewart, and it having been performed, there was no necessity of stating the consideration or stating what appellant was to do. Nor was it necessary that the consideration that was to pass to appellee should be a money consideration, as appellee contends and as seems to be the view of his counsel. He took great pains to testify that he was not to receive any part of the money that passed to Dr. Stewart for the property, and to be corroborated in that by the testimony of Dr. Stewart. "Any act which is a benefit to one party or a disadvantage to the other constitutes a sufficient consideration to support a contract." (*Burch* v. *Hubbard,* 48 Ill. 164.) Here appellee was to be benefited by being enabled to carry out the design he had formed to become a specialist and to be enabled to go with Dr. Stewart as a partner in such new line, and appellant was to part with his money for the property purchased, including the right to be freed from any future opposition on the part of Drs. Stewart and Hamilton. We think the consideration sufficient.

It is true that the condition at the end of the contract, that appellee should not engage in the practice of his profession in Viola unless forced to return by reason of some unforeseen necessity, is somewhat indefinite; but that may be said of many other agreements that courts are called upon to enforce. In interpreting such writings it is the duty of courts to give them a reasonable and sensible construction, and, as far as may be, carry out what was the intention of the parties. It can hardly be said that it was the intention of the parties that if appellee should try some place in his special line and make a failure, or should receive a telegram from some one to come to Viola, that that should be accepted as an unforeseen necessity that should force him to resume his practice in that place.

In all cases it is the duty of courts to uphold, rather than to defeat, contracts of parties freely and fairly entered into. The modern trend of the law has been to recognize a person's property right in the good will of a business built up by him, and the tendency is to remove the restrictions formerly placed upon its sale. According to well established rules of law in this and other States, we regard the restrictions imposed by the contract in this case as reasonable, and we see no reason for regarding the decree entered by the lower court in this case as incorrect, and from what has already been said we are of the opinion that the judgment of the Appellate Court is erroneous and should be reversed.

Appellee has made a motion in this case to tax to appellant the cost of filing an additional abstract, which motion we think should be denied.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*

Mr. JUSTICE SCOTT took no part in the consideration or decision of this case, the same having been submitted and taken by the court at the October term, 1902.