[No. 6390.]

## Freudenthal v. Espey.

1. Contracts—Public Policy—An experienced physician, enjoying an extensive practice, receives, as an assistant, a young man without experience or acquaintance, agreeing to pay him a stated salary, and render him other benefits, the employment to continue as long as the services of the assistant are satis-

factory, or so long as they mutually agree. The assistant upon his part agrees, that upon the termination of the relation he "will not either directly or indirectly practice either medicine or surgery in any of its branches, during the term of five years," in the city which is the residence and field of practice of his employer. The assistant's contract rests upon legal consideration, is reasonable, necessary to the protection of the employer, and is enforceable in equity.—(504)

2. **Consideration**—The adequacy of the consideration of such a contract will not be inquired into.—(500, 501)

3. **Where Such Contract Controls**—But such contract will not be held to control, when the assistant served thereunder but for a brief period, the case being manifestly not within the intention of the parties.—(505)

4. **Injunction—When Allowed**—An injunction was awarded to restrain the violation by a professional man of a restrictive covenant, in a contract by which he ·had been previously taken into the service of another.—(506)

*Error to Las Animas District Court*—Hon. M. S. BAILEY, Judge.

Mr. JESSE G. NORTHCUTT, Mr. A. WATSON McKENDRIE, Mr. JULIUS C. GUNTER, and Mr. HARRY E. HUTZ, for plaintiff in error.

Mr. JAMES McKEOUGH, and Mr. JOHN A. GORDON, for defendant in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

The parties to this record are physicians. The defendant in error instituted a suit in the lower court, and will hereinafter be called plaintiff, against the plaintiff in error, who will hereinafter be called the defendant, for an injunction to restrain the latter from practicing his profession in the city of Trinidad in violation of a restrictive covenant in a written contract between the two.

The complaint, after stating the professional character of the parties, and that plaintiff had long

been a practitioner in that community, had a large and extensive practice, and needed an assistant, set forth the contract of employment of the defendant as such assistant.

The contract was dated February 14, 1906, and employed the defendant for such length and period of time as proved satisfactory to the plaintiff, or so long as the two mutually agreed; defendant obligated himself to the best of his skill and ability to treat and professionally care for such patients as the plaintiff assigned to him, and upon the termination of his employment, to cease "the practice of medicine, surgery or obstetrics, or the branches of either in the city of Trinidad," either directly or indirectly, "for the full period of five years." In consideration of the faithful keeping and performance of the contract by the defendant the plaintiff covenanted and agreed to introduce and recommend the defendant to the friends, patients and patrons of the plaintiff, and to treat the defendant in a kind and courteous manner, and to furnish him, free of charge, the necessary conveyances with which to perform his professional duties, and pay him the sum of $125.00 per month for each and every month during his employment. It was also stipulated that if plaintiff terminated the employment it would not render him liable to defendant for damages. The defendant was likewise given the right to terminate said employment at any time.

By an addendum properly signed by said parties it was stated that said contract was in lieu of a certain written contract, theretofore existing between the parties, dated April 14, 1905. The complaint further alleged the faithful performance of the contract by the plaintiff; that defendant terminated said contract, and left the service and employment of the plaintiff about October 25, 1906, and immediately engaged in and continued the practice of medicine

and surgery as a physician in the city of Trinidad, to the damage of the plaintiff in the sum of $1,000. The allegations of the complaint, not admitted by the answer, were uncontroverted by the evidence, but the defense interposed was the invalidity of the restrictive covenant in said contract.

The contract of April 14, 1905, referred to in the addendum to the contract set forth in the complaint, was introduced in evidence, as was also a contract between said parties dated February 3, 1904, and referred to in an addendum to the contract of April 14th. Each of these contracts were identical with the contract in question, except as to date and amount of salary to be paid defendant. The first provided for the payment of $85.00 per month, and the second, $95.00. The evidence showed that under these three contracts the defendant had been continuously in the employ of the plaintiff from February 3, 1904, which was very soon after his graduation, until October 25, 1906; that when defendant left plaintiff's employ he advised the latter that he intended to go east and specialize, and received from the plaintiff a certificate to the effect that he had been associated with plaintiff for three years as assistant chief surgeon of the Victor Fuel Company, and had voluntarily severed that association; that for his ability as a physician and surgeon plaintiff had the very highest regard, knowing that whatever work he undertook he would do conscientiously and well, and that his habits, honor and integrity were above reproach.

The evidence further showed that plaintiff had been practicing medicine in Trinidad for eighteen years; that Trinidad was in area about one-half mile wide and one and one-half miles long, and had a population of about 10,000; that there were twenty-three physicians located and practicing in said city, and that plaintiff's practice extended throughout the

entire city and for many miles beyond; that he prob-
ably had the most extensive practice of any physician
in the county, and that defendant, from the patients
and friends of plaintiff to whom the latter had intro-
duced him, took quite a practice that plaintiff could
have retained; that plaintiff's damage was extensive
but the amount thereof could not be stated, but it was
stipulated in open court that if the plaintiff recovered
in the case, his damages should be assessed at $5.00.

Upon this record the issues were found generally
for the plaintiff and likewise specific findings made
in his favor, and the defendant permanently enjoined
and restrained from, directly or indirectly, engaging
in the practice of medicine, surgery or obstetrics, or
the branches of either within the limits of the city of
Trinidad for a term of five years from and after the
25th day of October, 1906.

To reverse that judgment this suit is prosecuted
here.

The defendant in his brief, after stating as the
errors which he relies upon for reversal, the last four
of the seven assigned, reduces the questions pre-
sented to the following:

1.   Whether in legal aspect the contract between
plaintiff in error and defendant in error was, as to
the restrictive covenant, valid and enforceable?

2.   Whether defendant in error has made such
a case as to warrant the assumption of jurisdiction
by a court of equity and its issuance of a writ of
injunction?

While the questions presented by this record are
of first impression in this court they have long since
had consideration by both English and American
judicial tribunals.

The law upon the subject appears to have under-
gone distinctive stages of transition or development.
The doctrine first announced by the English courts

held all contracts restricting one in the exercise of his trade or profession as contrary to public policy and void. Such also was the Roman law.—Puff. lib. 5 c. 2, sec. 3, 21 H. VII. 20. Through a succession of decisions this rule continued for two hundred years.—*Alger v. Thacher,* 19 Pick. 51, 52.

In the first reported English case, Year Book, 2 Hen. V. Paschæ, fol. 5, case 26, this doctrine was considered old and settled law. In that case the restrictive covenant was that defendant would not exercise his trade of dyer's craft within plaintiff's town for the term of half a year, and the limitation was considered so far contrary to law that the plaintiff was sworn at by Hull. J., and threatened with a fine.

Expanding commercialism, advancing science and arts, the desire and necessity for education, and the spirit of the age, however, eventually impressed the judicial mind with the necessity of remodelling the rule to meet the needs and requirements of men. It was recognized that both public interest and private welfare often render engagements not to carry on a trade or to act in a profession in a particular place for a limited time, proper and even beneficial.—*Mallan v. May,* 11 M. & W. 653; *Homer v. Ashford,* 3 Bing. 326; *Herreshoff v. Boutineau,* 17 R. I. 3.

Thus impressed the courts sought to meet such requirements by first fusing into the law a distinction between sealed instruments and simple contracts. This distinction being without reason, and not founded upon principle, soon disappeared, and the more logical distinction between general and limited restraint of trade grew and found favor with the courts. The latter distinction appeared as early as *Broad v. Jollyffe,* Cro. Jac. 596, in which it was held that a contract not to use a certain trade in a particular

place, was an exception to the general rule, and not void. The seed thus sown, did not fully fructify, however, until the leading case of *Mitchell v. Reynolds,* 1 P. Wms. 181, by which the attempted distinction between sealed contracts in restraint of trade, and those not under seal was abrogated, and the distinction between general and limited restraints, or rather the true distinction, to wit, between unreasonable and reasonable restraints was fully established.

Parker, C. J., in that case after stating, "That wherever a sufficient consideration appears to make it a proper and useful contract and such as cannot be set aside without injury to a fair contractor, it ought to be maintained," proceeds as follows: "but with this constant diversity, viz., where the restraint is general not to exercise a trade throughout the kingdom, and where it is limited to a particular place; for the former of these must be void, being of no benefit to either party, and only oppressive."

Now by the use of the language just quoted and by the decision Parker, C. J., said no more in effect relative to general restraints throughout the kingdom, and limited restraints to a particular place, than that, in his opinion, the former were unreasonable, void, "being of no benefit to either party and only oppressive," and that the latter may or may not be reasonable, and therefore valid or invalid, depending upon the circumstances of each particular case. See *Herreshoff v. Boutineau, supra.* That is, the two classes were given as examples of unreasonable and reasonable restrictions of trade. Contracts containing unreasonable restrictions are always void, with or without consideration; while those upon consideration, which show they are reasonable for the parties to enter into, and not unduly injurious to the public, are valid.

Cogent reasons exist for, and have been an-

nounced in, overthrowing unreasonable covenants in restraint of trade.  In *Rakestraw v. Lanier,* 104 Ga. 188, 194, it is said:

"It is certain that contracts in unreasonable restraint of trade are contrary to public policy and void, because they tend to injure the parties making them, diminish their means of procuring livelihoods and a competency for their families; tempt improvident persons, for the sake of present gain, to deprive themselves of the power to make future acquisitions, and expose them to imposition and oppression; tend to deprive the public of the services of men in the employments and capacities in which they may be most useful to the community, as well as to themselves; discourage industry and enterprise, and diminish the products of ingenuity and skill; prevent competition and enhance prices, and expose the public to all the evils of monopoly.—Clark on Contracts 446. Against evils like these, wise laws protect individuals and the public by declaring all such contracts void.— *Alger v. Thacher,* 19 Pick. 51."

But these objections apply only to unreasonable contracts, for if the restraint is not unreasonable, and is founded on a legal consideration, and is reasonably necessary to protect the interest of the party in favor of whom it is imposed, and does not materially prejudice the interests of the public, the law should and does uphold it.—*Mandeville v. Harman,* 42 N. J. Eq. 185; *Ryan v. Hamilton,* 205 Ill. 191.

Reasonable restrictive covenants are perfectly consistent with public convenience, individual interest, and the general welfare; such is the case where one disposes of a business in a particular place, with a contract on the part of the vendor not to carry on said business in the same place for a limited time. In *Mallan v. May,* 11 M. & W. 652. 666, it is said:

"Such is the class of cases of much more frequent occurrence, * *· * of a tradesman, manufacturer or professional man taking a servant or clerk into his service with a contract that he will not carry on the same trade or profession within certain limits.—*Chesman v. Maimby,* 2 Lord Raym. 1456, 2 Stra. 739. In such a case the public derives an advantage in the unrestrained choice which such a stipulation gives to the employer of able assistants, and the security it affords that the master will not withhold from the servant instruction in the secrets of his trade and the communication of his own skill and experience, from the fear of his afterwards having a rival in the same business."

In *Homer v. Ashford,* 3 Bing. 326, it is said:

"It may often happen that individual interest and general convenience render engagements not to carry on trade, or act in a profession in a particular place proper; that engagements of this sort between masters and servants are not injurious restraints of trade, but securities necessary for those who are engaged in it; and that the effect of such contracts is to encourage rather than cramp the employment of capital in trade and the promotion of industry."

It is said in *Herreshoff v. Boutineau, supra:*

"That to some extent at least, such contracts help rather than harm both. public interests and private welfare; that they are necessary to trade itself, in order to secure the sale, at fair value, of an established business, by protecting it against the immediate competition of the seller; also to enable one to learn a trade or get employment from another, free from the risk of having the knowledge and influence thus gained used to the employer's damage; to encourage investment in business enterprises under reasonable safeguards; and for other equally evident reasons."

Therefore, while the law does not permit one to restrain another from doing what the public welfare and·such other's own interests require he should do, it is recognized law that restraints, if made upon a consideration, ''so as it be a proper and useful contract, that is, so it is a reasonable restraint only, are good.'' The author of High on Injunctions, § 1167, in tracing the development of the law of the subject, says: ·

''The existing state of the law as deduced from the latest English and American authorities is that which recognizes and enforces covenants of this nature, even though the restraint is general throughout an entire state or country, provided it is founded upon a sufficient consideration and is not unreasonable in view of the nature and extent of the business of the covenantee.''

. But the defendant contends that in the case at bar there are neither recitals in the instrument sued on, or averments in the complaint, or proof adduced at the trial to overcome what he says is a fixed presumption of law, that a restrictive covenant is invalid in the absence of showing special circumstances to the contrary, and in support of that argument quotes from *Mallan v. May, supra,* as follows:

''Therefore if there be simply a stipulation though in an instrument under seal that a trade or profession shall not be carried on in a particular place without any recital in the deed and .without any averments showing circumstances which rendered such a contract reasonable, the instrument is void. * * * But if there are circumstances recited in the instrument (or probably if they .appear by averment) it is for the court to determine whether the contract be a fair and reasonable one or not; and the test appears to be whether it be prejudicial or not to the public interest, for it is on grounds of pub-

lic policy alone that these contracts are supported or avoided.''

It is unquestionably true that if there be simply a restrictive covenant, and nothing more, not to carry on in a particular place a trade or profession, the same is void. The reason of the rule is clearly stated in *Mitchell v. Reynolds, supra,* as follows:

''All contracts where there is a bare restraint of trade and no more must be void; but this, taking place only where the consideration is not shown, can be no reason why, in cases where the special matter appears, so as to make it a reasonable and useful contract it should not be good; for there the presumption is excluded, and therefore the courts of justice will enforce these latter contracts but not the former.''

Certainly no one would contend that a contract with A. whereby B. was restricted in following a trade or practicing a profession in a particular place without more, would be enforceable. It would not be enforceable because it cannot be gathered therefrom that either party would be benefitted thereby, nor would the public. Why should B. be restricted if neither he nor A., the one to whom he is bound, receives benefit thereby; and why should the public be the losers for the time of the services of B. and derive no benefit whatever in return? Such a contract would be unreasonable and, therefore, void. But this rule does not apply to the case at bar. Here the circumstances are set forth upon which the court is to judge whether it be a reasonable and useful contract.

Then under the law as thus announced it becomes necessary to ascertain the consideration essential to support such contracts, and if the contract in question is so supported. Defendant contends that it is without such consideration and for that

reason, void. Such contracts must have an actual consideration appearing from or in the contract, or, at least, set forth in the complaint.—Bish. Cont., § 126; Metc. Cont. 233; 1 Whart. Cont. § 434.

In *Mitchell v. Reynolds, supra,* and some other early cases, it was held that the consideration must be adequate; but this doctrine long since disappeared, and it is now settled that a legal consideration is sufficient, and it will not be inquired whether or not it is adequate, or, in other words, equal in value to the restraint agreed upon. Tindal, C. J., in the case of *Hitchcock v. Coker,* 6 A. & E. 438, said: "It is enough that there is actually a consideration for the bargain, and that such consideration is a legal consideration, and of some value."

In *Pilkington v. Scott,* 15 M. & W. 657, Alderson, B., said:

"That if it be an unreasonable restraint of trade it is void altogether; but if not, it is lawful; the only question being whether there is a consideration to support it, and the adequacy of the consideration the court will not inquire into, but will leave the parties to make the bargains for themselves. Before the case of *Hitchcock v. Coker* a notion prevailed that the consideration must be adequate to the restraint; that was in truth the law making the bargain, instead of leaving the parties to make it, and seeing only that it is a reasonable and proper bargain."

In *Rakestraw v. Lanier, supra,* it is said:

"The consideration upon which the defendant entered into the contract under review, as expressed, was the advantages and benefits that would flow to him by reason of the 'formation of said firm and partnership business.' This under the authorities cited, is a sufficient legal consideration, in so far as such contracts are dependent on a consideration to be sustained. The exact value of the consideration

the court ought not, and, in the nature of things, cannot undertake to measure. There is nothing in the record of the case which shows such gross inadequacy of consideration as to shock the conscience and amount in itself to evidence of fraud.''

So in the case at bar the consideration upon which the defendant entered into the contract in question as expressed therein was ''the salary and compensation'' which would inure to him by reason of the employment and association. The salary was $125.00 per month and, notwithstanding the fact that the contract could be terminated at the will of the plaintiff, without subjecting him to damage, it nevertheless was a monthly employment, and the compensation per month was fixed.

*Davis v. Mason,* 5 T. R. 118, was a case where A. took B. as an assistant in his business as a surgeon for so long a time as it should please A., B. agreeing not to practice on his own account for fourteen years within ten miles of the place where A. lived, and executed a bond to A. to insure the keeping of such covenant. Upon suit for violation of the restrictive covenant, the bond was held valid. The taking into service was considered a sufficient consideration. There must be a legal consideration to support the promise, but the taking into service is such, if it implies the imparting of special skill and knowledge. We will not inquire whether the defendant in submitting to the restraint made a judicious contract. The magnitude of the consideration moving the party promising is not to be weighed if there be some legal consideration.—*Ryan v. Hamilton, supra; Lynn v. Sigsbee,* 67 Ill. 75; *Beatty v. Coble,* 41 N. E. 590.

Then there are mutual promises to be performed which are the consideration for each other. The plaintiff was to introduce the defendant to plaintiff's

patients and friends, furnish proper conveyances for defendant, and in return the defendant was to exert his skill and attend to the professional business of the plaintiff and "earnestly endeavor to increase and build" it up. Therefore, in a sense, the restrictive covenant is upon an executory consideration.

It was certainly of great benefit to defendant— an inexperienced professional man—to be associated with a capable and efficient member of his own profession, long experienced and enjoying an extensive practice. Apparently the defendant appreciated this, for he secured from his employer a certificate showing such association. The public are likewise benefitted, locally, in having the inexperienced practitioner under the direction of, and guided by one skilled in his profession; and equally so is the public elsewhere benefitted when he engages in his profession for himself. We are clearly of the opinion that the facts of this case disclose a sufficient legal consideration. It was for the parties, and especially the defendant, to determine the *quantum* of the consideration and the law does not divest him of that right. If the consideration were colorable only, the law would not recognize it, but certainly the inadequacy of consideration is not so apparent as to shock the conscience, and especially in a country where by constitutional inhibition, the liberty of contract shall never be infringed.

Having determined that the contract in question is not vulnerable to the objection of insufficient consideration, we will advance to a determination of the question as to whether it be reasonable. In this connection let it be observed that whether or not such contracts are reasonable depend upon various considerations. As said in Clark on Contracts, p. 440:

"In determining whether a particular restraint is reasonable, the court will consider the nature and

extent of the trade or business, the situation of the parties and all the other circumstances. If on such consideration, the restraint seems unreasonable, the contract will be declared void, however partial the restraint may be. The fact that the restraint is reasonably necessary to protect the party for whose benefit it is imposed is considered a strong reason for upholding the contract, while on the other hand, if it is not necessary, the contract will always be held void, for in such a case there can be no reason for oppressing the other party and depriving the public of the benefit of his carrying on his trade.''

And in *Horner v. Graves,* 7 Bing. 743:

''We do not see how a better test can be applied to the question whether reasonable or not than by considering whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public. Whatever restraint is larger than the necssary protection of the party, can be of no benefit to either; it can only be oppressive; and, if oppressive, it is in the eye of the law, unreasonable. Whatever is injurious to the interests of the public, is void on the grounds of public policy.''

*Horner v. Graves* is cited and approved in *Mandeville v. Harman,* 42 N. J. Eq. 185, and the doctrine is there announced that the test to be applied is to consider whether the restraint is such only as is necessary to afford a fair protection to the interests of the party in whose favor it is given, and not so large as to interfere with the interests of the public. Agreements like this must be construed with reference to the objects sought to be attained by them. The object here is the protection of one of the parties against competition in his profession. The nature of the business to protect was a medical

practice extending far beyond the limits of the city of Trinidad; that the covenantee possessed this business, and the knowledge and the skill that enabled him to acquire it. Certainly in limiting the restriction to the city of Trinidad and for the period of five years was only affording "a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public." The restraint was no larger than the needs of the covenantee required. It was of material benefit to him, and was not oppressive on the covenantor, nor was it in any sense injurious to the public. The contract is in no wise forbidden by any principle of policy or law. The defendant can be as useful to the public at any other place as at Trinidad, and the interests of the community, elsewhere, are as important as they are there. Here the defendant had no business, was inexperienced, and presumably unskilled, desired and sought the benefits that would accrue to him by association with one so learned and skilled in his profession as the plaintiff. It is a known fact that professional skill, experience and reputation constitute part of the individuality of any particular person, and the amount of business which such person does depends largely upon the confidence reposed in him personally as a professional man. Under such circumstances it is not to be presumed that one whose personal excellency and skill has brought him a profitable business will take another in, and by vouching for such other's skill and honor endear him to his own patients, and leave such other free to steal away his profits.

It is quite true as argued by defendant that a distinction exists between that class of contracts binding one to desist from the practice of a learned profession, and those which bind one who has sold out a mercantile or other kind of business and the

good-will therewith connected, not to again engage in that business. The distinction is clearly pointed out in *Rakestraw v. Lanier, supra,* to wit: in the former class there should be a reasonable limit as to time, so as to prevent the contract from operating with unnecessary harshness against the person who is to abstain from practicing his profession at a time when his so doing could in no wise benefit the other contracting party. In the latter class such limit is not essential to the validity of the contract, but the restraint may be indefinite. The contract in question meets the requirements of this rule.

The circumstances under which the defendant entered into the employ of plaintiff here were such as to justify the latter in asking the former to enter into some agreement of the nature of that involved in this suit. It was of importance to the plaintiff to exact of the defendant a covenant which would prevent him, on the termination of the service, from utilizing the knowledge and experience he had gained by such service, in destroying the plaintiff's business. It was reasonable and proper. Besides, we are not disposed by judicial decree to render it practically impossible for the unlearned to better their condition, and become skilled in a trade or experienced in a profession, by means of proper apprenticeships, as we would do, were we to declare this contract void. Few professional men would take assistants and entrust them with their business, impart to them their knowledge and skill, bring them in contact with their clients and patients, unless they be assured that the knowledge and skill imparted, and the friendships and associations formed, would not be used, when the services were ended, to appropriate the very business such assistants were employed to maintain and enlarge.

Nor is the contract unreasonable for the want of

mutuality. It is pregnant with mutual obligations, heretofore alluded to in the discussion as to its consideration. Besides, we think it quite material that the contract has been partially executed. In *Philadelphia Ball Club v. Lajoie,* 51 Atl. Rep. 973, 974— a restrictive trade contract terminable on a ten days' notice—it is said:

''We think the further fact that the contract has been partially executed by services rendered, and payment made therefor, so that the situation is not now the same as when the contract was wholly executory. The relation between the parties has been so far changed as to give the plaintiff an equity, arising out of the part performance, to insist upon the completion of the agreement according to its terms by the defendant. This equity may be distinguished from the original right under the contract itself, and it might well be questioned whether the court would not be justified in giving effect to it by injunction, without regard to the mutuality or non-mutuality in the original contract. The plaintiff has so far performed its part of the contract in entire good faith, in every detail, and it would therefore be inequitable to permit the defendant to withdraw from the agreement at this late day.''

Counsel strenuously contend, however, that under the terms of this contract defendant might be held to an observance of the restrictive clause if he but served the plaintiff for a day or an hour, and for that reason the contract is unreasonable. We do not think so. Such covenants cannot be properly held to apply to cases which, although covered by the words, cannot be reasonably supposed ever to have been contemplated by the parties. . Besides, a rational view of the agreement excludes from its operation such possibilities. But even if some extreme case of

a technical breach producing no injury to the party to be protected, should be presented, sound principle requires, not that the agreement should be held void because of such possibility, for such case falls in truth outside and not within the real scope of the contract. The law is not so unreasonable as to set aside a man's own agreement for fear of an uncertain injury to him, and fix a certain damage upon another.

In *Haynes v. Doman*, 2 Law Reports C. D. 13, 26, Lindley, M. R., said:

"Possible cases in which the restriction would not be reasonable are suggested. One would have arisen if the defendant had left the plaintiff's employ within a very short time after entering it, and before the defendant could have acquired or carried away with him any knowledge of the plaintiff's mode of conducting his business. Such an event has not happened, and clearly was not contemplated. This objection, if sound, would invalidate all agreements of the sort determinable on short notice, unless some words were introduced excluding their application to cases never contemplated."

But even if the contract could not be so construed as to exclude such an extreme case, no court would grant an injunction, for there could be no threatened injury—the plaintiff having parted with nothing and the defendant having acquired nothing.

Here there is an express covenant, with full performance by one, and certain mischief arising from its breach by the other. The mischief cannot be repaired, nor can it well be estimated. The damages are continuing and accruing from day to day. The reasonable and fair protection to which the plaintiff is entitled can only be obtained by the parties conforming expressly and exactly to the terms of the contract. The defendant is in the wrong. He is

deliberately doing what he plainly agreed not to do. The equities are with the plaintiff and the decree is accordingly affirmed..          *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HILL concur.