### ELMER L. STYLES *vs.* WATERMAN LYON.

First Judicial District, Hartford, March Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In an action to restrain the defendant from practicing medicine in the city of New Britain on his own account, the plaintiff, an older physician, alleged in his complaint that he had engaged the defendant, a young physician, as his assistant, for one year from June 1st, 1908, under a written contract containing this provision: "It is agreed by and between the parties hereto that this agreement may terminate at any time when desirable by either party. In that event the said Waterman Lyon agrees that he will not locate or open an office within the limits of the town of New Britain for the practice of his profession." The complaint also alleged that this contract was continued between the parties; that on the 17th day of May, 1911, an amendment was made as to the basis of compensation; and that in 1912 the defendant terminated the contract and subsequently, more than a year after the amendment was made, opened an office for the general practice of medicine in New Britain. Upon demurrer it was *held:*—

1. That the complaint, fairly construed, alleged the continuance of the contract and of every applicable term thereof until the defendant left the employ of the plaintiff.

2. That whether the continuance was by renewal from year to year, or by general agreement or aquiescence, the restrictive provision was an essential part of the continuing contract, and was not limited either to the first period of one year or to a similar period after the amendment; though in view of its purpose and of the other provisions of the contract, it must be construed as limited to the lifetime of the plaintiff.

3. That the amendment was merely a modification affecting the consideration, and not a renewal of the contract.

4. That the restrictive provision was not void, either as an agreement in restraint of trade or as against public policy.

Styles *v.* Lyon.

5. That inasmuch as the continued enforcement of the restriction might, under changing circumstances, become a hardship to the defendant while affording no useful protection to the plaintiff, it was within the discretion of the trial court to limit, in its decree, the period of restraint, to the time during which the plaintiff should or might be practicing his profession in New Britain.

A contract restraining an employee, after he has terminated his service, from engaging in a similar employment under another employer, will be sustained, if it is not opposed to public policy, is not unreasonable under the circumstances, and is made on a valid consideration.

A contract in partial restraint of trade will not, as a rule, be held to be against public policy, unless it unduly interferes with the interests of the public.

The true test of reasonableness is whether the restrictive provision is necessary to protect the legitimate interests of the employer as affected by the contract of employment.

Where, as in this case, the area of restriction is confined to a single city and is necessary to protect the interests of the employer after the termination of the contract, it cannot be said that the contract is unreasonable as to the employee or injurious to the public.

When the consideration for a contract is disproportionate to the injury resulting to the promisor or to the benefit accruing to the promisee, its inadequacy may be so great as to lead a court of equity to refuse to enforce it, since equity will not enforce a contract that is hard and oppressive. This principle, however, has no application where the inquiry is solely as to the validity of a contract in partial restraint of trade; any legal consideration will support such a contract.

While restrictive agreements ancillary to contracts of employment may invoke a somewhat broader application of the public-policy rule than in the case of contracts of sale, yet in the construction of each class of contracts, and in the application of the test of reasonableness, there is no substantial difference.

Argued March 4th—decided April 17th, 1913.

ACTION to restrain the defendant from practicing medicine in the city of New Britain in alleged violation of his agreement with the plaintiff, brought to and tried by the Court of Common Pleas in Hartford County, *Smith, J.*, upon a demurrer to the complaint; the court overruled the demurrer and, upon the refusal of the defendant to plead further, rendered judgment for the plaintiff, from which the defendant appealed. *No error.*

*Epaphroditus Peck,* for the appellant (defendant).

*Bernard F. Gaffney,* for the appellee (plaintiff).

WHEELER, J. This action is brought to enforce a contract entered into on June 1st, 1908, between the plaintiff and defendant for the period of one year, by which the defendant, a physician and surgeon, agreed for a stipulated consideration to take charge of the plaintiff's business as a physician and surgeon in New Britain. The fifth clause of the contract was as follows: "It is agreed by and between the parties hereto that this agreement may terminate at any time when desirable by either party. In that event the said Waterman Lyon agrees that he will not locate or open an office within the limits of the town of New Britain for the practice of his profession." This contract was continued by the parties, and on May 17th, 1911, an amendment thereto relating to the consideration to be received by the defendant was made. Thereafter, in 1912, the defendant left the employ of the plaintiff, and subsequently opened an office for the general practice of medicine in said New Britain.

The assignment of errors is confined to the overruling of the defendant's demurrer to the complaint. The first ground of demurrer is that the restriction against the defendant practicing his profession in New Britain took effect only in the event that the agreement of hiring terminated within the specified period of one year, being the life of the contract. The complaint, fairly construed, alleges the continuance of the contract until the defendant left the employ of the plaintiff. The continuance of the contract may have been by renewal from year to year, or by general agreement or acquiescence of the parties. If its continuance was under a general agreement or acquiesence, all of its provisions, so far as applicable, remained in force; and

such provisions as were inapplicable to the period beyond the term of the original contract ceased to be effective. The only provision of the contract falling within this ineffective class was that providing that the contract should continue "for a period of one year." Obviously this could apply only to renewals of the contract for the term of one year. The provision of restriction was a necessary part of the contract, containing, as it did, protection for the experienced practitioner against the taking away of his practice by his assistant upon leaving his employ, in which the assistant had had the opportunity to gain the confidence and favor of the patients of his employer. The continuance of the contract continued the restriction.

We agree with the defendant that Exhibit *B*, amending the terms of the contract, did not renew the contract; all that it did was to modify the terms of the consideration of an existing contract. The defendant says this amendment is equivalent to saying "either party may terminate this agreement during said term of one year." Such a construction does violence to the language used, and goes counter to the plain intent of the contract. If the defendant could begin practice the day after the year ended, he would be in a better position to hold his employer's practice than if he had left the employ in the middle of the year. Grounds one and two are not well taken.

The demurrer further attacks the validity of this contract because it is (1) an agreement in restraint of trade, and (2) so inequitable, oppressive, and contrary to public policy, as to be unenforceable in a court of equity. This contract is not claimed to be one in general, but in partial, restraint of trade. A contract of this character, if not against public policy, is valid if it be founded upon a legal consideration and be reasonable. *Cook* v. *Johnson*, 47 Conn. 175. A contract in partial

restraint of trade will not, as a rule, be held to be against public policy, unless it unduly interferes with the interests of the public. *Gibbs* v. *Baltimore Gas Co.*, 130 U. S. 396, 409, 9 Sup. Ct. Rep. 553; *Swigert & Howard* v. *Tilden*, 121 Iowa, 650, 657, 97 N. W. 82; *Underwood & Son* v. *Barker*, L. R. (1899) 1 Ch. D. 300, 304. If its restrictive features be so large as to be likely to injure the public, it must be held contrary to the public welfare. A contract of sale restricting one entering a similar business in a limited area might not injuriously affect the public, while a contract restricting the exercise by one of his ordinary vocation might. In determining whether the public interest be involved in contracts restricting employment, we must keep before us the necessity of preserving inviolable the agreements of men so far as they be reasonable, and of maintaining the freedom of individuals to pursue their ordinary vocations. There is no attempt by this restrictive provision to restrain the defendant from pursuing in an extended territory his vocation for either an indefinite or a limited time. The area of restriction is confined to a single city; the rest of the world is open to him. Under such circumstances, it cannot be said that the defendant's liberty of pursuing his profession is interfered with to such an extent as to be unreasonable or to work injury to the public. *Ryan* v. *Hamilton*, 205 Ill. 191, 205, 68 N. E. 781. The consideration of the contract is a valid one; its adequacy is not open to inquiry in an examination of the legal validity of the contract. *Linn* v. *Sigsbee*, 67 Ill. 75, 80; *Guerand* v. *Dandelet*, 32 Md. 561, 568. When the consideration is disproportionate to the injury resulting to the promisor, or to the benefit accruing to the promisee, its inadequacy may be so great as to lead a court of equity to refuse to enforce the contract, since "equity will not enforce a contract that is hard

and oppressive." This principle has no application to an inquiry into the validity of a contract in partial restraint of trade; any legal consideration will support the validity of such a contract. Note to 24 L. R. A. (N. S.) 924, 926. The test of the reasonableness of this contract is met by answering affirmatively the question, Does it afford a fair protection to the interests of the employer in whose favor it is made? The area of restriction is limited to the place of practice. Without the aid of the restriction the defendant, having won the confidence of the plaintiff's patients, might break his contract, and take away from the plaintiff the very patients whose confidence he had gained while in the plaintiff's employ. There was no effective way by which the plaintiff could protect himself in his livelihood, except by preventing the defendant from wrecking his practice.

The defendant insists there is a distinction between a business and a profession; that while the period of restriction as to a business may be unlimited, the rule should not apply to a profession, since it is a purely personal relation whose benefits cease upon death or the cessation from practice. We do not think the distinction tenable. A profession partakes on its financial side of a commercial business, and its good will is often a valuable asset. It is true the profession has its personal side, but it is not true, except under exceptional circumstances, that a professional man is indispensable to any community. The distinction sought is made in a few cases, i. e. *Mandeville* v. *Harman*, 42 N. J. Eq. 185, 7 Atl. 37; *Rakestraw* v. *Lanier*, 104 Ga. 188, 30 S. E. 735; and *Freudenthal* v. *Espey*, 45 Colo. 488, 102 Pac. 280; but, generally, the courts do not recognize it, and almost uniformly follow the conclusion of *Cook* v. *Johnson*, 47 Conn. 175, 178, that "the mere fact that the duration of the restriction as to time is indefinite or perpetual will not of itself avoid the

contract if it is limited as to place, and is reasonable and proper in all other respects." *Tillinghast* v. *Boothby*, 20 R. I. 59, 60, 37 Atl. 344; *French* v. *Parker*, 16 R. I. 219, 221, 14 Atl. 870. The greater number of the authorities relate to restrictive convenants ancillary to contracts of sale. While similar covenants ancillary to contracts of employment may invoke a somewhat broader application of the public-policy rule, in the construction of each class of contracts, and in the application of the test of reasonableness, there is no substantial difference, and authorities upon restrictive covenants in partial restraint of trade are applicable alike to contracts of sale and of employment. Note to 24 L. R. A. (N. S.) 927, 934, 936, and cases cited.

The authorities generally are in accord upon the rule of law governing this action. A contract between an employer and employee providing for the restraint of the latter, after ceasing to be in his employ, from continuing in a similar employment, will be sustained if it be not against public policy, and be not unreasonable under the circumstances of the case, and be made on good consideration.

The facts of the complaint—and each case must be governed by its own facts—show no circumstances of hardship attendant upon the making of the contract, and no advantage taken of the employee and no wider restriction than is reasonably necessary for the protection of the employer; therefore the restrictive covenant cannot be held to be unreasonable.

The defendant points out that the restrictive covenant is unlimited in time, while the judgment limits the period of restriction to the time the plaintiff shall or may be practicing his profession in New Britain, and from this fact he argues that the contract as written was too unreasonable for enforcement. This limitation in the judgment was admittedly inserted at the

request of the defendant and with the acquiescence of the plaintiff. The defendant's argument rests upon a fact of his making, and not upon one of the court's making. The restriction, though in specific terms not limited in time, was by the fair construction of other provisions of the contract limited to the lifetime of the plaintiff. *Webster* v. *Buss*, 61 N. H. 40, 44. Whether, if the plaintiff had ceased to practice his profession, and had not transferred his practice to a successor, a court of equity would enforce the restriction in his behalf, need not be determined, for the facts as admitted by the demurrer do not present this case, but one where the defendant had remained in the plaintiff's employ for four years, and the plaintiff had resumed his practice and was seeking to protect himself in his practice by having the restrictive provision of his contract enforced. Some of the authorities hold, and not without apparent reason, that when the professional man has ceased to practice, the enforcement of the restriction would not benefit him, and would be an unreasonable hardship upon the covenantor, and, therefore, the restriction is, under the then circumstances, unreasonable, because it has ceased to furnish a fair protection to the covenantee. The hardship of enforcing a contract in behalf of one who has no present benefit from the contract and no reasonable probability of any in the immediate future, would incline a court of equity to hold such a construction of the contract without the fair intent of the parties to it and lead the court to refuse its aid. We said in *Cook* v. *Johnson*, 47 Conn. 175, 178, that "the court in its discretion might in the decree have anticipated such a contingency and provided for it"; and the decree in this case did no more than this.

There is no error.

In this opinion the other judges concurred.