**Truman's Pioneer Stud Farm, Appellee, v. Zion F. Baker et al., Appellants.**

1. PLEADING—*stipulation.* Where attorneys stipulate that defendant may under the general issue introduce all evidence admissible under any proper pleadings, and shall have the benefit of all proper pleas as though filed and issue joined thereon, and all proper rejoinders, such stipulation permits any defense admissible under any proper pleading, and it is the duty of the court to permit any

matter of fact to go to the jury which tends to establish any proper defense.

2. EVIDENCE—*answers admissible under pleadings.* Where, under the pleadings in an action on notes given in payment for a stallion, any fact is proper to be submitted to the jury which relates to a failure of a warranty or of consideration, or supports a contention that the horse is of little value, answers to questions put to the defendants and one qualified to testify should be allowed and should go to the jury where such questions relate in the main to the warranty and an alleged adjustment thereof and to the value of the horse.

3. INSTRUCTIONS—*peremptory.* The asking of a peremptory instruction is equivalent to an admission upon the record of every fact and conclusion in favor of the opposite party which the evidence tends to prove.

4. INSTRUCTIONS—*when peremptory improperly given.* In an action on a note given in payment for a stallion warranted for a year to be an average foal getter, it is error to direct a verdict for plaintiff where the uncontroverted evidence tends to support defendant's contentions that such stallion was kept after the year expired under a warranty that if he did not make good plaintiff would make it right, that a final settlement on the question of warranty was made but plaintiff failed to comply therewith, and that the stallion failed to make good.

Appeal from the Circuit Court of Moultrie county; the HON. WILLIAM G. COCHRAN, Judge, presiding. Heard in this court at the April term, 1912. Reversed and remanded. Opinion filed October 15, 1912. Rehearing denied December 20, 1912.

E. J. MILLER, for appellants.

FRANK J. THOMPSON and JAMES W. & EDWARD C. CRAIG, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This suit was filed in the Circuit Court of Moultrie County by the appellee corporation against the appellants. The declaration contains one special count on a promissory note, and the common counts. Appellants filed the plea of the general issue and four special pleas.

Demurrers were filed to the special pleas and sustained, and leave given the appellants to plead over.

Pending the filing of such new pleas, a stipulation was entered into between the parties hereto, as follows:

"It is hereby stipulated between the attorneys for the plaintiff and defendants, that under the general issue the defendants shall be entitled to introduce all evidence which would be admissible under any proper pleadings, and the plaintiff shall be entitled to introduce all evidence which would be admissible under any proper set of replications and rejoinders, and defendants shall have the benefit of all proper pleas the same as though filed and issue joined thereon, and plaintiff shall have the benefit of all proper replications the same as though filed, and the defendants of proper rejoinder thereto."

After the filing of the stipulation, the plea of the general issue was withdrawn, a jury impaneled and the evidence heard. At the conclusion of all of the evidence the court gave a peremptory instruction directing the jury to find the issues for the plaintiff, and to find that there "is due from the defendants to the plaintiff the sum of $2,825.66." The jury followed this instruction.

Motion for new trial was entered, setting up, among other things, that the court erred in refusing to admit proper evidence offered by appellants; that the court erred in giving the peremptory instruction requested by appellee; that the verdict is contrary to the law and the evidence, but the court overruled said motion, to which appellants excepted, and thereupon the court entered judgment upon the verdict and appellants again excepted. This appeal was then perfected, bringing the record before us.

The stipulation entered into by counsel herein, permitted any defense to have been made that would have been admissible under any proper pleading. A payment, want of consideration, failure of consideration, warranty and breach thereof, recoupment, accord and satisfaction, set-off, extension of time, or any other defense which might have been properly pleaded was

proper under this stipulation, and it was the duty of the court, upon the trial of the case, to permit to go to the jury on behalf of the appellants, any matter of fact that tended to the establishment of any of said defenses.

The only evidence of the appellee was the promissory note. Zion F. Baker, one of the appellants, was called by the appellants as a witness, and he testified, in substance, that appellee was the owner of a stud farm and was engaged in the business of importing and selling stallions for breeding purposes; that the appellants in the year 1909 purchased of appellee an imported stallion, and executed their certain notes in payment therefor, and received at the time a warranty that the horse they had purchased would be an average foal getter; that said warranty was for the term of twelve months, and if the horse was not satisfactory, after a trial of twelve months, the purchasers should have the privilege of returning the horse to appellee and selecting another one from the stables of appellee; that the horse then bought failed to show he was an average foal getter, showing only twelve to fourteen per cent. of foals, and was returned to appellee, and another horse was, in lieu thereof, given to appellants and their notes renewed and somewhat increased in amount to equal the difference between the value of the two horses and accrued interest, and a like warranty was given to appellants as before and for a like period; that the second horse likewise failed to measure up to the warranty, in that the percentage of foals shown by him was less than twelve per cent; that before the end of the year for which the second horse was warranted, the appellants notified the appellee of the failure of the second horse, and requested appellee to receive the horse back and give them another horse in lieu thereof, or make the warranty good in a settlement; that after considerable correspondence appellants and appellee, by appointment, met at Peoria; that after considerable conversation

upon the subject, appellees proposed to appellants that they retain the horse for another year, and if it then failed to make good, appellee would make it right; that appellants expressed a doubt as to the breeding qualities of the horse, and appellee then said for them to take the horse back and keep him another year; that appellee said they thought the horse would be all right; that the horse had only been imported a year and that it sometimes took two years for such horses to get acclimated; that appellants finally consented to make a further test of the horse, and a further extension of time was given on their notes; that after another year's trial, the horse still failed to meet the conditions of the warranty, showing no improvement as a breeder, and notice was again given to appellee of the failure of the horse, and appellee was asked to exchange for another horse from its stables, or that it take the horse back and make a settlement; that a meeting was had between the parties and these matters all talked over, and appellee then agreed that it would send another certain horse and exchange for the horse then held by appellants, the appellants to pay the freight one way and the appellee to pay the freight the other way and furnish a man to take charge of the horses in making the exchange; that appellants consented to this arrangement and relied upon said agreement; that the appellee failed to deliver the horse as agreed, although appellants, by letter, demanded that the delivery of the other horse should be made. This witness further stated that the note here sued upon is the total of the various notes and the interest thereon, merged into one, less $569 cash paid by appellants on the horse transactions, and that the only consideration for the note is the horse in question and whatever warranties accompanied same; that the horses, during the time they were in the care of the appellants, received the best of care and attention.

The following questions, relative to the last horse

received, by the appellants, were propounded to said witness, were objected to by the appellee and the objections sustained by the court:

Q. "I'll ask you if you were able, ready and willing to deliver this horse back to the plaintiff, at Bushnell, Illinois, on or before March 1, 1908?"

Q. "Did you and the plaintiff afterwards meet together and adjust the difference between you on the liability of the guaranty?"

Q. "You may state if the plaintiff afterwards agreed to ship another horse and make good this guaranty?"

Q. "What kind of a horse was it the plaintiff said he would ship you in settlement of this matter?"

Q. "You may state if your keeping the horse and not delivering it back was with or without the consent of the plaintiff?"

Q. "What was the difference in the values between the horse Buller V, in May, 1910, and the horse that they agreed to deliver to you in exchange for him to settle their liability on this guaranty?"

Mr. J. F. Fleming, another of the appellants, was sworn as a witness, and, in substance, stated the same as Mr. Baker. Certain other questions were propounded to this witness, objected to by appellee, and the objections sustained by the court. They are as follows:

Q. "What was the reasonable, fair, cash value of this horse when you offered to return him to the plaintiff just before March 1, 1908?"

Q. "Why didn't you deliver this horse back to the plaintiff on or before March 1, 1908?"

Q. "Was there any reason why you did not deliver him back on or before March 1, 1908?"

Q. "You may state, in your opinion, what was the difference between the values of the horse Buller V, and the horse which the plaintiff agreed to exchange for him in 1910, when you agreed to make the exchange."

Q. "At the time of the bringing of this suit, what

was the value of the horse Buller V, as a breeding horse?''

Mr. B. W. Patterson, a farmer, qualified as a witness by testifying that he was fifty-eight years of age, had handled horses all of his life and knew something about breeding horses, and he was asked the following question:

Q. ''Assuming the horse Buller V didn't get in foal more than twelve or fifteen per cent. of the mares bred to him, what, in your judgment, would be a fair cash value of the horse as a breeding horse?''

The court sustained an objection made by appellee to same.

The contract and warranty relating to the purchase of the first horse, which, by agreement of the parties, was made to extend to the second horse, is not questioned. It is contended, however, by appellants, that this agreement and warranty was, by said agreement, to extend to the second horse for the second year.

The first objection by appellants to be considered by us is, that the court erred in excluding proper evidence offered in their behalf. Under appellants' theory of their defense, they had a warranty that applied to the second horse for the second year, and that at the end of the first year the second horse had not fulfilled the said warranty, and, that as an inducement to have appellants give the second horse another year's trial, the warranty was, by agreement, extended. Under the pleadings in this case any fact relating to a failure of the warranty, a failure of consideration, or that supported the contention of appellants that, as a breeding horse, the horse in question was of little or no value after he failed to demonstrate that he was an average foal getter, was proper to be submitted to the jury. The questions propounded to Mr. Baker, Mr. Fleming and Mr. Patterson, as quoted above, were proper in the main, and should have been allowed to be answered and go to the jury as evidence in the case.

It is next urged the court erred in giving the peremptory instruction asked by appellee.

The asking of a peremptory instruction is in the nature of a demurrer to the evidence, and is equivalent to an admission upon the record of every fact and every conclusion in favor of the opposite party, which the evidence tends to prove, in other words, every fact which the jury might have inferred from it in favor of the opposite party. Chicago & N. W. R. Co. v. Dunleavy, 129 Ill. 132; Bartelott v. International Bank, 119 Ill. 259.

A peremptory instruction should not be given in any case where the evidence tends to prove any material issue in favor of the opposite party. Where a cause fairly depends upon the effect or weight of testimony, it is one for the consideration and determination of the jury. It should never be withdrawn from them, unless the testimony be of such a conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition to it. Chicago & N. W. R. Co. v. Snyder, 128 Ill. 655.

We believe the rule to be well settled in Illinois, that a court should never direct a verdict where the evidence of the opposition, standing alone, would tend to support the issue in favor of such opposite party.

It will be seen that the evidence supporting the contention of the appellants, as permitted to be introduced, not only tends to support such contention, but it is uncontroverted.

Had the evidence been submitted to the jury which was ruled out under the objections of the appellee, the case of appellants would have been even stronger than it was made.

For instance, the facts relating to the final settlement upon the question of the warranty, was an important and proper matter for the consideration of the jury. If the appellee and appellants did, in fact, come together and agree upon the basis of a settle-

ment, and if the appellants relied upon that and the appellee failed to comply, we cannot see any reason for excluding that evidence from the jury. It was a question of fact whether or not this difference between these litigants about the warranty, which it is admitted was originally given and under which a breach might have been declared, had it not been for the subsequent action of appellee, had been adjusted. Therefore, as the evidence tended to prove appellants' contention, this fact should have been submitted to the jury for decision.

It was a question of fact, and should have been submitted to the jury, as to whether or not the appellee, when it induced appellants to keep the horse another year and give him another trial and promised that if he did not then make good the appellee would make it right, did not make a warranty of the horse. The whole of that agreement, under which the appellants consented to keep the horse another year and give him another trial, was proper for the consideration of the jury and should have been submitted to them.

It will be remembered that this horse was a high-priced animal, and for that reason appellants were induced to pay $569 in cash and give their notes, with security for $2,340. For any other purpose than a stallion with good breeding qualities, he probably was not worth more than two hundred or three hundred dollars. It must also be borne in mind that the only consideration for the note and payment of the money was the horse and such warranties as accompanied him.

Hence, we say, that the contract or agreement under which the appellants were induced to give the horse another year's trial, by all reasonable intendments, implies that if the horse failed as a good breeder, appellee would make such failure good. That the horse did fail in this respect is evident from proof made showing a foal of from ten to twelve per cent.

Under our view of the case the court erred in ex-

cluding proper evidence offered on the part of appellants, in giving the peremptory instruction for appellee and in refusing to grant a new trial, and for these errors the judgment is reversed and the cause is remanded.

*Reversed and remanded.*